NAVY, MARSHALL & GORDON, P.C., Plaintiff,

v.

UNITED STATES INTERNATIONAL DEVELOPMENT–COOPERATION AGENCY, Agency For International Development, et al., Defendants.

Civ. A. No. 82–2671.

United States District Court, District of Columbia.

Feb. 23, 1983.

· John Lockie and Daniel C. Ball, Washington, D.C., for plaintiff.

Alexander Younger, Jane A. Restani, Attys., Civil Div., Dept. of Justice, J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, Senior District Judge.

In this action plaintiff seeks an award of compensatory and punitive damages, as well as mandatory injunctive relief, against a federal agency and seven federal officials who are, or have been, employed by that agency, for alleged violations of 42 U.S.C. § 1981 and the Thirteenth Amendment.

Defendant, United States International Development-Cooperation Agency, the parent organization of the Agency for International Development (hereinafter "AID")[1], and the individual defendants Hugh L. Dwelley, Gordon Evans, James S. Hastings, Robert C. Payette, Robert S. Perkins, Walter Sherwin, and Michael H. Snyder, have moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the complaint, or, in the alternative, for summary judgment pursuant to Rule 56. As grounds for their motion, the defendants allege (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person of certain of the defendants; (3) improper venue as to certain of the defendants; (4) insufficiency of service of process as to the individual defendants; and (5) failure to state a claim upon which relief can be granted. Plaintiff has opposed.

## I. INTRODUCTION

Plaintiff, Navy, Marshall & Gordon, P.C. ("NMG") is an architectural and engineering consulting firm. This dispute arises out of a contract entered into by NMG and AID, on behalf of the United States, to perform architectural and engineering services in connection with an agricultural facility, financed by AID in Guinea, West Africa, known as the Guinea Agricultural Production Capacity and Training Project. *See*

Contract AID/afr–C–1406, attached as Exhibit A to Defendants' motion.

NMG, is a minority business, completely black-owned and operated. It secured the government contract through the minority set-aside program administered by the Small Business Administration pursuant to Section 2[8](a) of the Small Business Act, 15 U.S.C. § 637(a)(2). Plaintiff's duties under the contract included designing the project's facilities, furnishing advisory services during construction, and supervising the construction itself. The contract was ultimately terminated "for the convenience of the government."

The complaint is styled in three counts. In Count I, plaintiff seeks compensatory damages, alleging that the federal defendants violated its rights guaranteed in 42 U.S.C. § 1981 by: (1) ordering plaintiff's representatives to the job site before completing construction of housing which defendants were allegedly required to furnish under the contract; (2) failing to supply plaintiff's representatives with adequate food while they were at the job site; (3) disallowing plaintiff's claimed costs under the contract; (4) "overly wide dissemination" of an audit report prepared by AID auditors; (5) refusing to pay plaintiff's invoices under the contract; (6) improperly terminating the contract for the convenience of the government; (7) referring charges that plaintiff violated 18 U.S.C. §§ 371 (conspiracy) and 1001 (false statements) to the Criminal and Civil Divisions of the Department of Justice; (8) sending an allegedly "libelous" cable to plaintiff concerning its contract performance; (9) imposing "severe financial hardship" on plaintiff; (10) breaching an alleged setoff agreement; (11) "blacklisting" plaintiff from participation in a State Department program to enhance security for American embassies; and (12) refusing to pay monies allegedly due plaintiff under the contract. Plaintiff charges that all such actions were undertaken as a result of racial animus toward its owners and employees.

1. In order to give the complaint a broad reading, we have assumed, for purposes of our analysis of sovereign immunity, that the U.S., as well as AID, has been named as a defendant.

In Count II of the complaint, plaintiff alleges that the conduct described above imposed conditions "tantamount to involuntary servitude" and "peonage" upon plaintiff in violation of the Thirteenth Amendment. NMG contends that damages should, therefore, be awarded to it under the theory of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which established that a cause of action for damages could be asserted directly under the Fourth Amendment.

Count III of the complaint merely repeats and realleges all of the items included in the previous two counts, declaring that the actions of the defendants were committed willfully, maliciously and with "utter disregard for the consequences to NMG." Thus, plaintiff asserts, it is entitled to an award of punitive damages against both AID and the individual defendants.

The complaint does not include in specific language any claim for equitable relief. Plaintiff first raised such a claim in its opposition to defendants' motion to dismiss. The relief requested is an order, "(1) reinstating the Plaintiff to the position (monetary or otherwise) it would have been in if there had been no discrimination; and (2) compelling the Agency and Individual Defendants to pay money they have improperly withheld on the Plaintiff's Guinea Project invoices."

Defendants have moved to dismiss the complaint asserting, *inter alia,* that: (1) sovereign immunity bars an award of money damages against AID as an agency of the U.S.; (2) none of the individual defendants maintains contacts or ties to the District of Columbia sufficient to enable this Court to exercise personal jurisdiction over him; (3) the individual defendants have never been personally served with process as required by Rule 4(d)(1); and (4) plaintiff has failed to allege facts sufficient to state a cause of action under either 42 U.S.C. § 1981 or the Thirteenth Amendment, against any of the federal defendants.

We find merit in defendants' arguments, and accordingly grant their motion to dismiss as to both AID and the individual defendants.

## II. DISCUSSION

### A. *Sovereign Immunity and Subject Matter Jurisdiction as to AID*

AID contends that this Court lacks subject matter jurisdiction over plaintiff's claims for money damages due to the doctrine of sovereign immunity. Plaintiff counters that sovereign immunity has been waived by the United States for damage claims arising under 42 U.S.C. § 1981 and the Constitution, and that jurisdiction is grounded in 28 U.S.C. §§ 1343(4)[2] and 1331,[3] respectively. Plaintiff is mistaken.

There can be no question that, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); *Lombard v. U.S.,* 690 F.2d 215, 218 (D.C.Cir.1982). Suits for money damages against the U.S., its agencies and instrumentalities, cannot be maintained unless there is an "unequivocally expressed" waiver of sovereign immunity. *United States v. Testan,* 424 U.S. 392, 399–401, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Moreover, the " 'limitations and conditions upon which the Government consents to be sued must be strictly observed and excep-

---

**2.** 28 U.S.C. § 1343(4):

    The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: ...

    (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

**3.** 28 U.S.C. § 1331:

    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

tions thereto are not to be implied.'" *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981), quoting *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). None of the statutes and constitutional provisions relied upon by plaintiff contains the required waiver of sovereign immunity.

■ Neither 28 U.S.C. § 1331, nor any provision of the Constitution, is a waiver of sovereign immunity such as to enable plaintiff to recover damages against the U.S. or any of its instrumentalities. *Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.) cert. denied, —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *see Jaffee v. United States,* 592 F.2d 712, 715–18 (3d Cir.), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Similarly, the jurisdictional adjunct to the civil rights statutes, 28 U.S.C. § 1343, does not embody a waiver of sovereign immunity as against the U.S. *Garcia v. U.S.,* 538 F.Supp. 814, 816 (S.D. Tex.1982). Finally, the United States has not waived its immunity to suits for damages under 42 U.S.C. § 1981, the basis for plaintiff's statutory cause of action. *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982). Due to the doctrine of sovereign immunity, therefore, this Court lacks subject matter jurisdiction over NMG's claims for damages against AID, as an agency of the U.S., even if those claims arise under 42 U.S.C. § 1981 and the 13th Amendment.[4]

Plaintiff contends, however, that sovereign immunity does not divest this Court of jurisdiction over plaintiff's claims for equitable relief, first raised in its opposition to the instant motion. *See NAACP v. Levi,* 418 F.Supp. 1109 (D.D.C.1976); *Baker v. F. & F. Investment Co.,* 489 F.2d 829 (7th Cir.1973). The relief requested is a mandatory injunction compelling the defendants

to, "(1) reinstate the Plaintiff to the position (monetary or otherwise) it would have been in if there had been no discrimination; and (2) . . . *pay money* [to NMG] they have improperly withheld on the Plaintiff's Guinea Project invoices." (emphasis added). We do not find plaintiff's argument persuasive.

■ The dispositive factor in determining the applicability of sovereign immunity is the practical effect of the judgment or decree sought by the plaintiff. *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687 n. 6, 69 S.Ct. 1457, 1460 n. 6, 93 L.Ed. 1628 (1949); *Alabama Rural Fire Insurance Co. v. Naylor,* 530 F.2d 1221, 1225 (5th Cir.1976). Generally, "if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,'" *id.,* quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), then the suit is barred. The equitable relief plaintiff seeks would certainly "expend itself on the public treasury," since the requested injunction would compel the U.S. to pay money to NMG. The central thrust of this action is an award of over six million dollars ($6,000,000) in compensatory and punitive damages. "That [NMG's] complaint [has] also been cast in terms of declaratory and equitable relief does not alter the substance of that which [plaintiff] seek[s]—a money judgment against the United States." *Larsen v. Hoffman,* 444 F.Supp. 245, 251 (D.D.C.1977).

We conclude, therefore, that plaintiff's claims against AID for equitable relief are, in purpose and effect, tantamount to damage claims, and, for the reasons set forth above, they are also barred in this Court by the doctrine of sovereign immunity.

### B. *Personal Jurisdiction Over the Individual Defendants*

■ While sovereign immunity acts as an absolute bar to damage claims against fed-

---

**4.** An additional and related ground for our conclusion is the rule that a federal agency cannot be sued for damages *eo nomine* without explicit statutory authorization. *See Blackmar v. Guerre,* 342 U.S. 512, 514–15, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *Painter v. Federal Bureau of Investigation,* 537 F.Supp. 232, 236 (N.D.Ga.

1982). Plaintiff has not listed, nor can we find, any statute enabling AID to be sued for damages *eo nomine.* Thus, plaintiff's statutory and constitutional damage claims are subject to dismissal as against the agency defendant on this basis alone.

eral governmental entities, the doctrine does not completely shield federal officers who act beyond the scope of their authority, in derogation of established constitutional and statutory principles, i.e. so-called "ultra vires" conduct. *See Larson, supra; Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1977); *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiffs, in appropriate cases, may recover damages against government officials when those officials are sued in their individual capacities for specific "constitutional torts." *Id.; Bivens, supra; Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Briggs v. Goodwin,* 698 F.2d 486 (D.C.Cir.1983).

■ The complaint at issue here charges that seven present and former officers and employees of AID are personally liable for alleged violations of rights secured plaintiff by 42 U.S.C. § 1981 and the 13th Amendment. As noted above, plaintiff seeks a multi-million dollar award of compensatory and punitive damages. The defendants contend, however, that this Court is powerless to entertain any damage claims whatsoever against them because: (1) they each lack "minimum contacts" with the District of Columbia sufficient to establish personal jurisdiction in this forum; and (2) plaintiff has not yet made personal service of process, pursuant to Rule 4(d)(1), of the Federal Rules of Civil Procedure, as to any of the seven individuals.

Because we find that plaintiff has never personally served, nor even attempted to personally serve, any of the individual defendants, we conclude that personal jurisdiction over those defendants is lacking, and consequently, their motion to dismiss must be granted.[5]

■ When federal officials are sued in their individual capacities for money damages, they must be personally served with process in order for a Court to have personal jurisdiction over them. *Micklus v. Carlson,* 632 F.2d 227 (3d Cir.1980); 2 Moore's Federal Practice ¶ 4.29 at 310–11 (2d ed. 1982). The guiding principles for this rule were well-stated by the Court of Appeals for the Third Circuit:

> The applicable method of service under Rule 4(d) depends upon the theory under which a party proceeds. Where money damages are sought from a public official in his individual capacity, service by certified mail under Rule 4(d)(5) is insufficient. *Griffith v. Nixon,* 518 F.2d 1195, 1196 (2d Cir.), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Relf v. Gasch,* 511 F.2d 804, 808 n. 18 (D.C.Cir. 1975). Instead, the plaintiff must proceed under the terms of Rule 4(d)(1) and effect personal service. (footnotes omitted)

*Id.* at 240;[6] *See Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (28 U.S.C. § 1391(e), providing for nation-

---

**5.** Since our disposition is based on plaintiff's failure to effect service of process on the named individuals, we need not decide whether the traditional "minimum contacts" principle applies as an additional ground for assessing personal jurisdiction. We note, however, that none of the defendants reside in D.C., defendants Payette and Evans are no longer employed by AID, none of the acts complained of by plaintiff occurred in the District of Columbia, and none of the individual defendants transacts business in the District, or regularly does or solicits business here, so as to render him amenable to service under the D.C. Long-Arm Statute, D.C.Code § 13–423. In light of these facts, we would be hard-pressed to find a basis for personal jurisdiction in line with "traditional notions of fair play and substantial justice." *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 *reh. denied,*

438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

**6.** Rule 4(d)(1) provides:

(d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

wide service of process on federal officials when they are sued in their official capacities, does not apply when federal officials are sued in their personal capacities for money damages).

It is now over five months since the instigation of this lawsuit.[7] Yet, plaintiff admits, and the solitary affidavit of service on record confirms, that none of the named individual defendants has been personally served. Rather, eight copies of the complaint were left at the offices of AID on September 20, 1982, purportedly to be delivered by AID to the named defendants at some unspecified time. This does not comport with the language or spirit of Rule 4(d)(1). It is clear, therefore, that adequate and effective service of process has not been made on any of the individual defendants. Consequently, personal jurisdiction has not been established over them, and plaintiff's claims against the individuals are subject to dismissal because of that defect.[8]

### III. CONCLUSION

Plaintiff has failed to establish two significant jurisdictional prerequisites to the maintenance of this lawsuit. First, subject matter jurisdiction is lacking over plaintiff's damage claims against AID due to the doctrine of sovereign immunity. Second, personal jurisdiction over the remaining defendants is also lacking because plaintiff has not served them with process, even though this action has been pending for more than five months. This Court is, therefore, powerless to adjudicate any of plaintiff's claims, and the action must be dismissed in its entirety.[9]

For the foregoing reasons, it is, this 23rd day of February, 1983

ORDERED that the motion of defendants to dismiss plaintiff's complaint be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that this action be, and the same hereby is, DISMISSED as to both AID and the seven individual defendants.

---

7. *Cf.* new Rule 4(j) F.R.Civ.P., effective Feb. 26, 1983, requiring dismissal of action for failure to effect service within 120 days after filing of complaint.

8. Plaintiff asserts that the reason for its failure to effect proper service on the individual defendants is AID's unwillingness to provide addresses for those men. We reject this argument out of hand. Plaintiff has not shown, by affidavit or otherwise, that the individual defendants are evading service or that they have taken up clandestine lifestyles. Furthermore, AID, as a co-defendant, is under no duty to provide plaintiff with assistance in locating and serving additional and distinct defendants. Finally, as defendants point out, AID is prohibited by the Privacy Act, 5 U.S.C. § 552a, from disclosing the home addresses of AID employ-

ees without the express consent of the individual concerned. No such consent has been given in this instance.

9. In light of this disposition, we need not reach other grounds for dismissal urged upon us by defendants, *viz.* improper venue and failure of plaintiff to state a cause of action under either 42 U.S.C. § 1981 or the 13th Amendment. Nor do we need to pass upon defendants' additional claim that subject matter jurisdiction is lacking due to the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, which vests exclusive jurisdiction in the U.S. Claims Court over contract dispute actions in which more than $10,000 in damages is sought against the U.S. *See Metadure Corporation v. United States,* 490 F.Supp. 1368 (S.D. N.Y.1980).