38% — Inland Steel Mining Co.
(Delaware Corporation)

62% — Itasca Pellet Co.
(Delaware Partnership)

100% — Inland Steel Company
(Delaware Corporation)

60.484%
(37.5% of Butler) — Hanna Itasca Co.
(Delaware Corporation)

39.516%
(24.5% of Butler) — Wheeling Itasca Co.
(Delaware Corporation)

100% — The Hanna Mining Co.
(Delaware Corporation)

100% — Wheeling-Pittsburgh Steel Corporation
(Delaware Corporation)

JSPjr/sm
10/21/81

Theodore J. BETLYON, Robert S. Lech,
and Steven Markoya, Plaintiffs,

v.

Clare SHY ("A"), R. Karakantas ("B"),
C.A. McPhee ("C"), Defendants.

Civ. A. No. 83–211 MMS.

United States District Court,
D. Delaware.

Oct. 25, 1983.

Theodore J. Betlyon, Robert S. Lech and Steven Markoya, pro se.

Richard J. McMahon, Asst. U.S. Atty., Wilmington, Del., J. Brian Ferrel and Stuart M. Fischbein, Dept. of Justice, Washington, D.C., for defendants Shy and Karakantas.

Januar D. Bove, Jr., Jeffrey B. Bove and James J. Woods, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, Del., for defendant McPhee.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This pro se action attacks the legitimacy of the federal tax withholding system.

Plaintiffs Theodore J. Betlyon, Robert S. Lech and Steven Markoya, three employees of the General Foods Manufacturing Corporation ("General Foods"), seek damages against defendants for their complicity in the alleged illegal withholding of taxes from plaintiffs' paychecks. The complaint named as defendants Clare Shy, the District Director for the Wilmington District Office of the Internal Revenue Service ("IRS"), Richard Karakantas, a revenue agent in the Examination Section of the IRS's Wilmington District Office, and George A. McPhee, the Administrative Services Supervisor for General Foods.

### I. *Facts*

The Court is unable to decipher from plaintiffs' illusory complaint exactly what wrong defendants are supposed to have committed. Plaintiffs allege that defendants Shy and Karakantas "conspired to alter Plaintiffs positions with General Foods" and that all three defendants "conspired ... to effect extortion from Plaintiffs, being without authorization to so withhold." This Court has "jurisdiction," the complaint further asserts, under 42 U.S.C. §§ 1983, 1985 and 1986.[1] When pressed at oral argument plaintiffs maintained that they rested their action solely on alleged violations of sections 1983, 1985 and 1986. Plaintiffs' complaint, however, alleged no specific actions by defendants that were supposed to have violated these civil rights statutes.

The uncontroverted facts outlined in defendants' briefs and documented by affidavits and exhibits paint a clear picture of the events underlying plaintiff's claims. In January, 1983, plaintiffs and nine other General Foods employees filed "W–4" forms with their employer which failed to list any withholding status. Instead, each of these twelve employees indicated on his W–4 form that the form did not provide for

---

1. For purposes of this motion the Court assumes that plaintiffs meant to say that they base their substantive causes of action under sections 1983, 1985 and 1986, not that those statutes supply this Court with jurisdiction.

his status. Defendant McPhee reviewed these W-4's in the course of his work at General Foods and, in February, 1983, notified defendant Karakantas pursuant to Treas.Reg. 31.3402(f)(2)–(1)(g)(1) that these W-4 forms claimed complete exemptions from withholding.[2] When defendant Karakantas reviewed these W-4 forms he similarly interpreted them as claiming complete exemptions from withholding. Consequently, as he was required to do under Treas.Reg. 31.3402,[3] he examined plaintiffs' tax records to determine plaintiffs' eligibility for complete exemption. On March 18, 1983, after ascertaining that plaintiffs' 1981 returns showed taxable income and that plaintiffs' W-2 forms for 1982 showed gross income, Karakantas sent work sheets to plaintiffs pursuant to the same treasury regulations.

Plaintiff Betlyon failed to return his work sheet or respond to the IRS inquiry in any manner. Plaintiffs Lech and Markoya responded by letters which explained that the plaintiffs were "not working on a W-4." Karakantas thereafter determined that plaintiffs had not met their burden of proving their entitlement to an exemption under Treas.Reg. 31.3402. He sent form letter 1659 to General Foods which instructed the company to place plaintiffs on a single withholding status with one allowance.[4]

## II. Service of Process

Defendants have filed motions to dismiss primarily on the grounds of inadequate service of process and failure to state a claim. While continuing to assert their service of process defense, defendants at oral argument urged this Court to reach the merits of plaintiffs' substantive claims. Unless plaintiffs served defendants in accordance with Fed.R.Civ.P. 4, however, this Court lacks personal jurisdiction over defendants. See 4 C. Wright & A. Miller, Federal Prac-

---

2. Under Treas.Reg. 31.3402(f)(2)–1(g) an employer is required to submit to the IRS any W-4 forms that show 15 or more allowances or claim complete exemption from withholding.

3. Treas.Reg. 31.3402(f)(2)–1(g)(5) provides, in part:

(5) Computation of withholding. (i) Until receipt of written notice from the Internal Revenue Service that a certificate, a copy of which was submitted under this section, is defective, that certificate is effective and the employer shall withhold on the basis of the statements made in that certificate, unless that certificate must be disregarded under the provisions of paragraph (g)(5)(vi) of this section.

(ii) The Internal Revenue Service may find that a copy of a withholding exemption certificate submitted contains a materially incorrect statement or it may determine, after written request to the employee for verification of the statements on the certificate, that it lacks sufficient information to determine if the certificate is correct. If the Internal Revenue Service so finds or determines and notifies the employer in writing that the certificate is defective, the employer shall then consider the certificate to be defective for purposes of computing amounts of withholding.

(iii) If the Internal Revenue Service notifies the employer that the certificate is defective, the Internal Revenue Service will, based upon its findings, advise the employer that the employee is not entitled to claim a status exempt-

ing the employee from withholding or is not entitled to claim a total number of withholding exemptions in excess of a number specified by the Internal Revenue Service in the notice, or both. The Internal Revenue Service will also specify the Internal Revenue Service office to be contacted for further information.

(iv) The Internal Revenue Service will provide the employer with a copy for the employee of each notice it furnishes to the employer under this paragraph (g)(5) in addition to the notice furnished to the employer for his own use. The Internal Revenue Service will also mail a similar notice to the employee at the address of the employee as shown on the certificate under review.

(v) The employer shall promptly furnish the employee who filed the defective certificate, if still in his employ, with a copy of the written notice of the Internal Revenue Service with respect to the certificate and may request another withholding exemption certificate from the employee. The employer shall withhold amounts from the employee on the basis of the maximum number specified in the written notice received from the Service.

4. Defendant Shy, it should be noted, although generally responsible for monitoring the Wilmington District's W-4 Review Program, seems to have had no personal involvement with Karakantas' W-4 investigation at the District office. Shy's facsimile signature did, however, appear on some form letters sent to plaintiffs.

*tice & Procedure* § 1063, at 204 (1969). The Court will, therefore, address the sufficiency of service of process before considering defendants' motions to dismiss for failure to state claim. *See Season-All Industries, Inc. v. Turkiye Sise ve Cam Fabrikalari, A.S.,* 425 F.2d 34, 38 (3d Cir. 1970); *Arrowsmith v. United Press International* 320 F.2d 219, 221 (2d Cir.1963) (en banc); *Allied Poultry Processors Co. v. Polin,* 134 F.Supp. 278, 279–80 (D.Del. 1955); 5 C. Wright & A. Miller § 1351. The Court will first address service on defendant McPhee.

### A. *Defendant McPhee*

■ An individual defendant such as McPhee must be served in accordance with Fed.R.Civ.P. 4(c)(2)(C)[5] or 4(d)(1).[6] Rule 4(d)(1) requires that a competent adult be served personally, be served by leaving a copy of the summons and complaint at his dwelling house or place of abode with a resident of suitable age and discretion, or be served through an authorized agent. McPhee states by affidavit that the summons and complaint were served on his supervisor at General Foods while McPhee was vacationing in another state. Service left at a person's place of employment does not meet Rule 4(d)(1)'s requirements, *Gipson v. Township of Bass River,* 82 F.R.D. 122, 125 (D.N.J.1979); 4 C. Wright & A. Miller § 1096, at 364, and plaintiffs have

made no showing that McPhee's supervisor was authorized by appointment or law to accept service. Rule 4(c)(2)(C)(i) allows for service in accordance with the law of the state where the district court sits, but plaintiffs have failed to comply with either 10 *Del.C.* § 3103 (1975) or Del.Super.Ct.R. 4(f)(1), which prescribe requirements similar to those of Fed.R.Civ.P. (4)(d)(1). Rule 4(c)(2)(C)(ii) allows for service by mail (with certain conditions), but plaintiffs did not attempt to perfect service under that provision. Plaintiffs, therefore, have not properly served defendant McPhee.

### B. *Defendants Shy and Karakantas*

Plaintiffs asserted strenuously at oral argument and in their briefs that they are suing defendants Karakantas and Shy in their individual capacities, not their official capacities'. For purposes of this opinion plaintiffs characterizations are accepted as true. Thus, plaintiffs needed to have complied with Rules 4(c)(2)(C) or 4(d)(1) to perfect service. *See Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir.1980); *Navy, Marshall & Gordon v. United States International Development-Cooperation Agency,* 557 F.Supp. 484, 489–90 (D.D.C.1983). Defendants assert that under *Lawrence v. Acree,* 79 F.R.D. 669 (D.D.C.1978), plaintiffs should have served defendants Shy and Karakantas under Rule 4(d)(5).[7] This

---

**5.** Fed.R.Civ.P. 4(c)(2)(C) provides:

A summons and complaint may be served on a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

(i) pursuant to the law of the State in which the district court is held for the service of summons and complaint or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State, or

(ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subpara-

graph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

**6.** Fed.R.Civ.P. 4(d)(1) provides that service shall be made:

Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an authorized agent by appointment or by law to receive service of process.

**7.** Fed.R.Civ.P. 4(d)(5) provides that service shall be made:

Upon an officer or agency of the United States, by serving the United States and by sending a copy of the summons and of the

rule requires service upon the United States if an officer of the United States is named as a defendant. The rule in the Third Circuit Court of Appeals appears to be, however, that an officer served in his individual capacity, even if acting under color of his authority, must be served under Rule 4(d)(1). *See Micklus v. Carlson*, 632 F.2d at 240. Moreover, a recent decision of the United States District Court for the District of Columbia casts serious doubt on the continuing validity of the *Lawrence* case. *See Navy, Marshall & Gordon v. United States International Development Corp.*, 557 F.Supp. at 489–90. Perhaps one could harmonize *Micklus* and *Lawrence* by requiring a plaintiff, suing a defendant in his individual capacity for actions taken under color of legal authority, to serve process under *both* Rule 4(d)(1) and Rule 4(d)(5). Indeed, it might make good sense to serve notice on both the individual and the government in such suits. This Court, however, will reserve that issue for a case where there is a full opportunity for adversary briefing and argument. For now, the Court will follow *Micklus* and hold that plaintiffs need have complied only with Rules 4(d)(1) or 4(c)(2)(C).

Uncontradicted affidavits show that defendant Shy, like defendant McPhee, was not properly served under Fed.R.Civ.P. 4(c)(2)(C) or 4(d)(1). Plaintiffs served Shy's secretary at Shy's place of employment. There is no indication that Shy's secretary was an agent authorized to receive service of process. Thus, for the same reasons defendant McPhee was not served properly, defendant Shy also was improperly served.

It is assumed that plaintiffs effected personal service on defendant Karakantas since he, unlike defendants Shy and McPhee, has not asserted by affidavit or otherwise that he was not so served. Thus, plaintiffs have complied with Rule 4(d)(1) with respect to defendant Karakantas.

Defendants' motion to dismiss for insufficient service of process will be granted with respect to defendants Shy and McPhee but denied as to defendant Karakantas.

### III. *Motion to Dismiss*

Because this Court has personal jurisdiction over defendant Karakantas it must adjudicate his motion to dismiss for failure to state a claim. The Court has considered evidence outside of the pleadings, however, so it will treat defendants' motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Numerous recent court decisions have upheld the constitutionality of the federal income tax withholding system against claims such as those brought by plaintiffs. *See Stonecipher v. Bray*, 653 F.2d 398 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Campbell v. Amax Coal Co.*, 610 F.2d 701 (10th Cir.1979); *Donovan v. Maisel*, 559 F.Supp. 171 (D.Del.1982); *Schultz v. Stark*, 554 F.Supp. 1219 (E.D.Wis.1983); *Robinson v. A & M Electric, Inc.*, 534 F.Supp. 302 (D.N.M.1982), *aff'd*, 713 F.2d 608 (10th Cir. 1983); *Chandler v. Perini Power Constructors, Inc.*, 520 F.Supp. 1152 (D.N.H. 1981); *Rapp v. Peper*, 80–1 U.S. Tax Cases (CCH) ¶ 9204 (D.Alaska 1979); *United States v. Roberts*, 425 F.Supp. 1281 (D.Del.

complaint by registered or certified mail to such officer or agency. If the agency is a corporation the copy shall be delivered as provided in paragraph (3) of this subdivision of this rule.

Service on the United States, required by Rule 4(d)(5), is accomplished under Rule 4(d)(4), which provides that service shall be made:

Upon the United States, by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant

United States attorney or clerical employee designated by the United States attorney in writing filed with the clerk of the court and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency.

1977). Specifically, the statutory provisions and treasury regulations under which defendants acted have been upheld against due process challenges, *see Stonecipher v. Bray*, 653 F.2d at 401–402; *Campbell v. Amax Coal Co.*, 610 F.2d at 702; *Donovan v. Maisel*, 559 F.Supp. at 174–75, against "entrapment" challenges, *see Donovan v. Maisel*, 559 F.Supp. at 174–75, against first amendment challenges, *see Schultz v. Stark*, 554 F.Supp. at 1220, against thirteenth amendment challenges, *see United States v. Roberts*, 425 F.Supp. at 1283, and against "extortion" challenges. *See id.* In light of these cases, and reading plaintiff's complaint most generously, this Court cannot find any traces of a valid claim against defendants.

One element in this case does differ from the prior cases challenging the withholding system: plaintiffs' did not explicitly claim exemptions on their W–4 forms as, presumably, did the plaintiffs in earlier cases. This distinction does not, however, make plaintiffs' claims any more valid than those of the previous tax protestors. Defendants reasonably interpreted plaintiffs' W–4 forms as requesting complete exemption from withholding and properly processed the forms as such. Indeed, plaintiffs' W–4 forms could reasonably be interpreted in no other way. By instituting this lawsuit plaintiffs have made clear that although they refrained from checking the exemption boxes on their W–4 forms, they were asking then, and are asking now, for freedom from the burden of the withholding tax. It is the government's withholding of taxes, not defendants' interpretation of their forms, that is the substance of plaintiffs' suit.

▉ Even if plaintiffs' complaint could be read as stating a plausible challenge to defendants' actions or to the federal withholding system, plaintiffs' suit still would fail to state a cause of action under 42 U.S.C. §§ 1983, 1985 and 1986. Section 1983 provides no cause of action against federal officers or private individuals acting under color of *federal* law. *See District of Columbia v. Carter*, 409 U.S. 418, 423–25, 93 S.Ct. 602, 605–07, 34 L.Ed.2d 613 (1972); *Campbell v. Amax Coal Co.*, 610 F.2d at 702; *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir.1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972). Plaintiffs have not alleged any actions by defendants that could conceivably be considered as having been taken under color of *state* law. Plaintiffs' section 1983 claims, therefore, must fail. Both the 1985 and 1986 claims also cannot be maintained. Plaintiffs have alleged no racial or other class-based discrimination. Such allegations, however, are essential elements of a claim under sections 1985 and 1986.[8] *United Brotherhood of Carpenters & Joiners, Local 1610 v. Scott*, —— U.S. ——, —— –——, 103 S.Ct. 3352, 3355–57, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971); *Campbell v. Amax Coal Co.*, 610 F.2d at 702.

An order will be entered granting summary judgment to defendant Karakantas.

### IV. *Attorney's Fees*

Defendants have urged this court to award them attorney's fees.[9] The Court declines to award fees at this time. Plaintiffs should be aware, however, that given the overwhelming number of cases upholding the validity of the tax withholding system, the time may well come in the near future when this Court will look favorably upon such requests. Should plaintiffs, now knowing the frivolous nature of their suit,

---

**8.** The prohibition in 42 U.S.C. § 1985(*2*) against conspiracies to intimidate witnesses in federal court is not, like the rest of that section, limited to cases of racial or other class-based motivation. *Kush v. Rutledge*, —— U.S. ——, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Plaintiffs have not and, of course, could not allege any cause of action against defendants under that provision of the civil rights statutes.

**9.** Defendants argue that even if this Court lacks personal jurisdiction over them, it still has the power to impose attorney's fees against the plaintiff for bringing a frivolous, bad faith lawsuit. That question need not be decided.

attempt to make valid service on defendants Shy and McPhee or to amend their complaint, this Court will give serious consideration to a renewed request by defendants for attorney's fees. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Robinson v. A & M Electric, Inc.,* 713 F.2d 608 (10th Cir.1983); *Rapp v. Peper,* 80–1 U.S. Tax Cases (CCH) ¶ 9204; *Schultz v. Stark,* 554 F.Supp. at 1220–21; *cf. Stonecipher v. Bray,* 653 F.2d 398 (costs for frivolous appeal awarded).