**Jody PARSONS, Lisa Parsons, and Linda Parsons, Plaintiffs,**

v.

**David AGUIRRE, Joe Paul, and Edward Nance, individually and as members of the Federal Protection Service, Defendants.**

**No. 86 C 5212.**

United States District Court, N.D. Illinois, E.D.

Nov. 22, 1988.

David C. Thomas, Law Offices, IIT Chicago–Kent College of Law, Chicago, Ill., for plaintiffs.

Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### I. INTRODUCTION

The plaintiffs in this case—Jody, Lisa, and Linda Parsons—have sued the defendant members of the Federal Protection Service—David Aguirre, Joe Paul, and Edward Nance—in their official and individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The plaintiffs allege violations of their first, fourth, and fifth amendment rights arising from the defendants' conduct at a political demonstration attended by the plaintiffs. The defendants moved to dismiss or for summary judgment, and this court referred the motion to Magistrate Elaine E. Bucklo. In a thorough and well-reasoned opinion, Magistrate Bucklo recommended that the defendants' motion be granted as to Counts II, III, and IV, but denied as to Count I; the magistrate also recommended that the case proceed against the defendants only in their

individual capacities. After de novo review of the Report, this court concludes that the magistrate's analysis is correct, but issues this order to address the defendants' contention that the case should be dismissed for lack of personal jurisdiction—an issue the defendants properly preserved but the magistrate did not address.[1] This court concludes that when a federal officer is sued only in his individual capacity, the Federal Rules of Civil Procedure require only personal service upon the officer in accordance with Rule 4(d)(1)—and not service upon the United States under Rules 4(d)(4) and 4(d)(5) as well. Accordingly, the court overrules the defendants' objections, adopts the Report and Recommendation, and attaches the Report as an appendix to this opinion.

## II. FACTS

The facts and issues in this case are outlined in Magistrate Bucklo's Report and will not be repeated in detail here.[2] On May 7, 1985, the plaintiffs were arrested by the defendants in connection with a demonstration that took place in the plaza of the Kluczynski Federal Building in Chicago, Illinois. All three plaintiffs were charged in federal court with disorderly conduct. On December 10 and 11, 1985, Lisa and Jody Parsons were found not guilty of all charges, but Linda Parsons was convicted of disorderly conduct.

On July 17, 1986, the plaintiffs filed this *Bivens* action, claiming that the defendants, in both their official and individual capacities, violated the plaintiffs' first, fourth, and fifth amendment rights. In Count I, the plaintiffs claim that in connection with the demonstration the defendants used excessive force and falsely arrested, falsely imprisoned, and maliciously prosecuted the plaintiffs—all of which allegedly violated the plaintiffs' fourth and fifth amendment rights and was done in order to inhibit the plaintiffs from exercising their first amendment rights. In Counts II, III, and IV, the plaintiffs claim that the defendants or their agents committed vandalism,

burglary, and theft of the plaintiffs' property, in violation of the fifth amendment and in order to inhibit them from exercising their first amendment rights. Specifically, the plaintiffs allege that the defendants destroyed one of their automobiles, burglarized their home, and stole the family van.

The plaintiffs personally served the individual defendants in timely fashion according to Rule 4(d)(1), but initially did not serve the United States. The defendants then moved to dismiss the complaint or for summary judgment based on several grounds. First, they contended that the doctrine of sovereign immunity applies and, therefore, that this court had no subject matter jurisdiction over the case. *See, e.g., Del Raine v. Carlson,* 826 F.2d 698, 703 (7th Cir.1987).

Second, the defendants argued that the complaint does not allege constitutional violations, but rather only the common law torts of false arrest, false imprisonment, malicious prosecution, trespass, conversion, and intentional infliction of emotional distress. Accordingly, the defendants argued, as federal officers they were absolutely immune from state law claims concerning acts committed within the scope of their official duties. *See Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.ed.2d 1434 (1959).

Finally, the defendants contended that the action should be dismissed because the plaintiffs never properly served the defendants and, therefore, this court never obtained personal jurisdiction over them. The crux of this argument is that whenever a federal officer is sued for actions taken under color of law—whether in his official or individual capacity—the plaintiff must serve the government and, if the officer is being sued in his individual capacity, also must personally serve the officer. *See Lawrence v. Acree,* 79 F.R.D. 669, 670–71 (D.D.C.1978); *see also Sorg Paper Co. v. Murphy,* 111 F.R.D. 363, 368 (S.D.Ohio

---

1. The plaintiffs have filed no objections to the Report.

2. For further detail, see the Report attached as an appendix to this opinion.

1986) (one-sentence dictum);[3] *Francisco v. Schmidt,* 532 F.Supp. 850, 852 (E.D.Wis. 1982). In response to the government's motion to dismiss, the plaintiff did serve the United States on July 6, 1987—almost one year after the complaint was filed.[4]

This court referred the fully briefed motion to Magistrate Bucklo, who recommended that the defendants' motion to dismiss or for summary judgment on Count I be denied because the complaint stated a *Bivens* claim and because there were disputed material facts that had to be adjudicated at trial. She also recommended, however, that the defendants' motion for summary judgment on Counts II, III, and IV be granted. In addition, she stated that the doctrine of sovereign immunity applied and, therefore, that the defendants could be sued only in their individual capacities.

The government then filed three objections to the Report and Recommendation. First, they claimed that the magistrate failed to address the issue of proper service and personal jurisdiction. Second, they claimed that the magistrate incorrectly extended *Bivens* to cover common law torts. Consequently, they contended, the defendants should be able to invoke the doctrine of absolute immunity. Finally, they argued that *Bivens* should not be expanded to cover first amendment violations.

## III. ANALYSIS

Federal Rule of Civil Procedure 4(d) delineates the appropriate method of service, depending on the entity sued. Rule 4(d)(1), which governs service upon an individual, requires that a copy of the summons and of the complaint be delivered to the individual personally or by proper abode service. Rule 4(d)(5), which prescribes the proper mode of service upon officers of the United States, such as the defendants here, requires that service of a copy of the summons and of the complaint be made upon the United States as well as upon the individual officer: "[Service shall be made] [u]pon an officer or agency of the United States, by serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency." Service upon the United States is governed by Rule 4(d)(4), which requires not only delivery of a copy of the summons and of the complaint to the United States Attorney for the district in which the action is brought, but also mailing a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C.

This court concludes that service under Rules 4(d)(4) and 4(d)(5) was not required in this case and that personal service under Rule 4(d)(1) was sufficient to confer personal jurisdiction over these federal officers. First, the two major treatises on federal civil practice state that Rule 4(d)(5) applies only if the action is against the federal officer in his official capacity. *See* 2 J. Moore, *Moore's Federal Practice* § 4.29, at 4–240 to –241 (3d ed. & Supp.1988); C. Wright & A. Miller, *Federal Practice and Procedure* § 1107, at 163 & n. 29 (2d ed. 1987) [hereinafter Wright and Miller]. If, on the other hand, the suit is against the federal official in his individual capacity, Rule 4(d)(5) does not govern, and service should be made as in any action brought against an individual—that is, under Rule 4(d)(1).

A wealth of case law lends support to this position. For example, in *Micklus v. Carlson,* 632 F.2d 227 (3d Cir.1980), the court stated that

> [t]he applicable method of service under Rule 4(d) depends upon the theory under which a party proceeds. Where money

---

**3.** *Sorg* dealt with the situation where the individual officer was not personally served in accordance with Rule 4(d)(1). In a one-sentence dictum, the court stated that the United States also must be served under Rule 4(d)(5), citing *Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir. 1980). As the following section indicates, however, *see infra* pp. 295–96, *Micklus* did not hold that and, indeed, held just the opposite.

**4.** Although the government in its reply brief stated that the plaintiff did not effect service on that date, at an oral hearing on October 27, 1988, the parties agreed that the United States was indeed served on July 6, 1987.

damages are sought from a public official in his individual capacity, service by certified mail under Rule 4(d)(5) is insufficient.... Instead, the plaintiff must proceed under the terms of Rule 4(d)(1) and effect personal service.

632 F.2d at 240 (footnotes and citations omitted); *see id.* at 240–41; *see also Griffith v. Nixon,* 518 F.2d 1195, 1196 (2d Cir.) (to extent damages sought against federal officer personally, Rule 4(d)(5) not applicable), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Relf v. Gasch,* 511 F.2d 804, 808 n. 18 (D.C.Cir.1975) (Rule 4(d)(5) applies only if claim is against officer in official capacity; in individual capacity actions, Rule 4(d)(5) is inapplicable); *Mecartney v. Hoover,* 151 F.2d 694 (7th Cir. 1945); *Waller v. Butkovich,* 584 F.Supp. 909, 925–26 (M.D.N.C.1984) (federal officers sued in individual capacities not personally served under Rule 4(d)(1), though United States was served under Rules 4(d)(4) and 4(d)(5); dismissal therefore was warranted); *Pavlov v. Parons,* 574 F.Supp. 393, 399 (S.D.Tex.1983) (when suit is against federal officer in individual capacity, service under 4(d)(1) is sufficient; plaintiff not required to serve United States under 4(d)(5)); *Betlyon v. Shy,* 573 F.Supp. 1402, 1406 (D.Del.1983); *Navy, Marshall & Gordon, P.C. v. United States Int'l Dev.-Coop'n Agency,* 557 F.Supp. 484, 489–90 (D.D.C.1983) (following *Micklus* ); *Green v. Laird,* 357 F.Supp. 227, 229 (N.D.Ill.1973) ("[T]he proper manner of serving process on government officials under Rule 4(d) depends on whether the suit contemplates individual liability [Rule 4(d)(1) ] or is limited to relief that would affect the defendants only in their official capacities [Rule 4(d)(5) ]....") (bracketed material in original; footnote omitted). Although most of these cases dealt with the lack of personal service on a federal official, with service effected only on the United States in ac-

cordance with Rule 4(d)(5),[5] the reasoning of these cases certainly indicates that Rule 4(d)(5) does not apply at all when the federal official is sued only in his individual capacity.

Furthermore, the seminal case upon which the defendants rely, *Lawrence v. Acree,* has been called into doubt. In *Lawrence,* the plaintiff brought an action for compensatory and punitive damages under 42 U.S.C. § 1985(1) against four employees of the United States Customs Service. The plaintiff sued each of the defendants in his individual capacity and served the individual defendants, though not the United States. The court dismissed the suit without prejudice for lack of personal jurisdiction, holding that when "defendant federal officers are sued either in their official capacities *or for actions taken under color of legal authority,* the service provisions of Fed.R.Civ.P. 4(d)(5) are applicable." *Id.* at 671 (emphasis added).

In so holding, however, the district court relied in part on *Briggs v. Goodwin,* 569 F.2d 1 (D.C.Cir.1977), *rev'd sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), a District of Columbia Circuit case interpreting the provisions of the Mandamus and Venue Act of 1962, 28 U.S.C. § 1391(e).[6] Section 1391(e) provides that a plaintiff may bring an action against a federal officer or employee "acting in his official capacity or under color of legal authority" in any judicial district in which 1) the defendant resides, 2) the cause of action arose, 3) any real property involved in the action is located, and 4) the plaintiff resides, if no real property is involved. The Act also provides that the summons and complaint in such actions must be served according to the Federal Rules, except that delivery of the summons and complaint to the officer or agency as required by the Rules may be made by certified mail

---

**5.** *But see, e.g., Pavlov,* 574 F.Supp. at 399 (facts and holding squarely on point).

**6.** The court also relied on the fact that the office of the local United States Attorney will defend suits against federal officers in their individual capacities. Therefore, the court reasoned, the requirements of Rule 4(d)(5) must be met "in

order to assure that notice of the lawsuit will be received by those who will defend against the claims." 79 F.R.D. at 671. In both that case and ours, however, the United States Attorney's Office had ample notice of the suit, having represented the federal officers from the onset of the action.

beyond the territorial limits of the district in which the action was brought. The D.C. Circuit held that federal officers sued even in their individual capacities are subject to the provisions of the Venue Act.

The district court in *Lawrence* interpreted certain portions of the appellate court's opinion in *Briggs* as indicating that section 1391(e) and Rule 4(d)(5) operate in tandem and, therefore, that the provisions of Rule 4(d)(5) apply when the officer is sued for actions taken under color of federal law—even if the officer is sued in his individual capacity. The Supreme Court, however, reversed the D.C. Circuit's decision in *Briggs* and held that the venue provisions do not apply to actions for money damages brought against federal officers in their individual capacities. *See* 444 U.S. at 543–45, 100 S.Ct. at 784–85. Consequently, *Lawrence's* reliance on the D.C. Circuit's opinion in *Briggs* is misplaced.[7] *See also Betlyon*, 573 F.Supp. at 1405–06; *Navy*, 557 F.Supp. at 489–90.

## IV.  CONCLUSION

For the foregoing reasons, the court overrules the defendants' objections to Magistrate Bucklo's Report and Recommendation and adopts the Report. Accordingly, the court grants the defendants' motion to dismiss or for summary judgment on Counts II, III, and IV, and enters judgment for the defendants and against the plaintiffs on those counts. The court denies the defendants' motion with respect to Count I. The plaintiffs may proceed against the defendants in their individual capacities only.

## APPENDIX

### REPORT AND RECOMMENDATION OF MAGISTRATE ELAINE E. BUCKLO

Jody Parsons, Lisa Parsons, and Linda Parsons are suing David Aguirre, Joe Paul, and Edward Nance in a *Bivens* action. The plaintiffs claim that the defendants, who during the events giving rise to this suit were employees of the federal protection service, violated plaintiffs' rights under the First, Fourth, and Fifth Amendments to the Constitution. Defendants have moved to dismiss the complaint or for summary judgment. I recommend that the defendants' motion to dismiss count I be denied. I recommend that the motion to dismiss counts II, III, and IV be denied. I also recommend that summary judgment be granted as to counts II, III, and IV.

On May 7, 1985, the plaintiffs were arrested during a demonstration concerning the United States' involvement in Nicaragua which took place at 230 South Dearborn Street in Chicago in the plaza of the Kluczynski Federal Building. Linda Parsons was convicted of disorderly conduct; Lisa and Jody Parsons were acquitted on December 11, 1985. That evening, a car owned by Lisa Parsons and parked in front of the plaintiffs' house was vandalized. On January 24, 1986, plaintiffs' house was burglarized. The only items taken were a VCR and videotapes of demonstrations in which plaintiffs had participated. Other items of value—stereo, TV—were not taken. On March 29, 1986, a van belonging to plaintiffs and parked in their driveway was stolen.

In count I, plaintiffs claim that as a result of the May 7 demonstration, defendants used excessive force, falsely arrested, falsely imprisoned, and filed false and malicious complaints against the plaintiffs. Plaintiffs claim all these acts were done in order to inhibit them from exercising their First Amendment rights and in violation of their rights under the Fourth and Fifth Amendments. In counts II, III, and IV, plaintiffs claim that the defendants or their agents committed the vandalism, burglary, and theft of plaintiffs' property (car, home, van) in violation of the Fifth Amendment and in order to inhibit them from exercising their First Amendment rights.

As an initial matter, defendants challenge this court's subject matter jurisdic-

---

7. Indeed, Wright and Miller have cited the Supreme Court's decision in *Briggs* for the proposition that Rules 4(d)(4) and 4(d)(5) do not apply when federal officers are sued only in their individual capacity. *See* 4A Wright & Miller, *supra* p. 7, § 1107, at 163 n. 29.

tion on grounds of sovereign immunity. Plaintiffs have sued the defendants in both their individual and official capacities; they strenuously deny that the United States is a defendant. In *Kentucky v. Graham,* 473 U.S. 159, 165–66[, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114] (1985), the Supreme Court distinguished personal from official capacity suits:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of ... law. Official capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent" ... an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. (citations omitted).

*Kentucky v. Graham* was a § 1983 case, not a *Bivens* action. However, the same rationale for sovereign immunity in the state context should also apply in the federal context. *Butz v. Economou,* 438 U.S. 478, 504[, 98 S.Ct. 2894, 2909–10, 57 L.Ed. 2d 895] (1978). Furthermore, a recent Seventh Circuit case holds that "[a] suit against federal officers in their official capacity ... is a suit against the United States." *Del Raine v. Carlson,* 826 F.2d 698, 703 (7th Cir.1987). Since the United States is immune from suit, except where it explicitly waives its immunity, *United States v. King,* 395 U.S. 1, 4[, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52] (1969), and it has not done so here, this suit is barred to the extent that it is brought against the defendants in their official capacities. Plaintiffs can proceed against defendants only in their personal capacities.

Defendants seek dismissal of all four counts on grounds of absolute immunity. They argue that none of the claims states a constitutional violation, only common law torts. If so, then the defendants can claim absolute immunity under *Barr v. Matteo,* 360 U.S. 564[, 79 S.Ct. 1335, 3 L.Ed.2d 1434] (1959), which held certain government officials absolutely immune from state law claims concerning acts committed within the scope of their official duties. With respect to count I, at least, this argument cannot prevail. Count I states a constitutional claim under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388[, 91 S.Ct. 1999, 29 L.Ed.2d 619] (1971). *Bivens* held that federal officials can be held liable "for injuries consequent upon a violation of the Fourth Amendment." *Bivens* at 395[, 99 S.Ct. at 2004]. A *Bivens* action, in essence, is a federal version of § 1983, developed by the Supreme Court in order to vindicate Fourth Amendment rights. *Bivens* was expanded in *Davis v. Passman,* 442 U.S. 228[, 99 S.Ct. 2264, 60 L.Ed.2d 846] (1979), in order to encompass claims of Fifth Amendment violations. Although the Supreme Court has never explicitly so held, there is also authority for *Bivens* to cover First Amendment claims. *See Dellums v. Powell,* 566 F.2d 167, 194–96 (D.C.Cir.1977) and Joan Steinman, "Backing Off *Bivens* and the Ramifications of This Retreat for the Vindication of First Amendment Rights," 83 Mich.L.Rev. 269 (1984).

Plaintiffs state a *Bivens* claim in count I for violations of their First, Fourth, and Fifth Amendment rights. Defendants complain that plaintiffs have done nothing more than allege common law torts, dressing them up in constitutional garb in order to state a federal claim. While not a particularly sympathetic description, in some measure this is what *Bivens* does. The *Bivens* Court recognized that federal officials acting under color of their authority pose a special threat when that authority is abused—a threat not posed when a private citizen commits the same tortious act. *Bivens,* 403 U.S. at 392[, 99 S.Ct. at 2002]. Plaintiffs here have pleaded facts which, if true, would entitle them to relief for restrictions of their First Amendment rights and for violations of Fourth and Fifth Amendment rights. Count I cannot be dismissed as to these claims.

Counts II, III, and IV state a claim for relief as to plaintiffs' First and Fifth Amendment claims. Plaintiffs allege that their property was taken without due process, which adequately states a claim under *Bivens* and *Davis v. Passman,* 442 U.S.

228[, 99 S.Ct. 2264, 60 L.Ed.2d 846] (1979), for violation of their Fifth Amendment rights. Their First Amendment claims are somewhat less clear. Nevertheless, authority does exist, in this circuit and elsewhere, for expanding *Bivens* to include First Amendment violations. *Chapman v. Pickett*, 586 F.2d 22 (7th Cir.1978); *Dellums v. Powell*, 566 F.2d 167, 194–96 (D.D. C.1977); *Paton v. La Prade*, 524 F.2d 862 (3d Cir.1975). Defendants are alleged to have committed the vandalism, burglary, and thefts alleged in these counts in retaliation against plaintiffs for the exercise of their First Amendment rights. Such conduct, if true, might well have the effect of chilling plaintiffs' exercise of First Amendment rights in the future.

As a practical matter, however, this does plaintiffs little good, since nothing in counts II, III, and IV can survive defendants' summary judgment motion. The standard for summary judgment is the same as the standard for a directed verdict under Fed.R.Civ.P. 50(a). The motion must be denied unless no reasonable jury could return a verdict for the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*[, 477 U.S. 242], 106 S.Ct. 2505, 2511–12[, 91 L.Ed.2d 202] (1986). No reasonable jury could find in favor of plaintiffs on these facts. Assuming that all of the acts of counts II, III, and IV took place as plaintiffs allege, there is nothing to connect defendants to those acts. Plaintiffs' case is entirely circumstantial—and weak at that. The inferences they draw are: the coincidence of the vandalism to their car on the evening of their acquittal; the items stolen from their home; the coincidence of the theft of their van with their return to Chicago; and their allegations of the defendants' hostility. Drawing all reasonable inferences in plaintiffs' favor, plaintiffs have not shown sufficient facts from which a reasonable jury could return a verdict in their favor.

To sum up: The entire complaint can proceed against defendants only in their personal capacities, not their official capacities. Defendants' motion to dismiss count I should be denied. Defendants' motion to dismiss counts II, III, and IV should be granted as to the First Amendment claim, but denied as to the Fifth Amendment claim. Defendants' motion for summary judgment as to counts II, III, and IV should be granted. More succinctly, only the First, Fourth, and Fifth Amendment claims of count I survive against the defendants personally.

(s) Elaine E. Bucklo
ELAINE E. BUCKLO
United States Magistrate