The CITIZENS NATIONAL BANK OF WAUKEGAN, as administrator of the Estate of Steven Stawnychy, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 78–1550.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1979.

Decided March 27, 1979.

Gerald D. Jutila, Waukegan, Ill., for plaintiff-appellant.

Eloise E. Davies, App. Section, Civ. Div., Dept. of Justice, Washington, D.C., Antonio J. Curiel, Chicago, Ill., for defendants-appellees.

---

Before CASTLE, Senior Circuit Judge, and PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The sole issue presented in this appeal is whether the administrator of a deceased serviceman may properly maintain a cause of action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., for alleged intentional torts of military correctional officers.[1]

On May 5, 1975, Steven Stawnychy enlisted in the U.S. Navy and reported to the Recruit Training Command, Great Lakes, Illinois. Seven days later he was confined to the Navy Correctional Center for disrupting a military training drill. During his confinement on May 13, 1975, Stawnychy was allegedly physically attacked without provocation by three U.S. Marine Corps correctional guards.[2] The complaint asserted that as a result of recruit's physical punishment he "sustained serious and permanent injuries whereby he was unable to control his actions." On June 3, 1975, Stawnychy apparently committed suicide by lying in front of a passenger train.

The plaintiff-appellant, administrator of Stawnychy's estate, filed a two count complaint against the United States and the three correctional guards claiming jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq. The first count alleged intentional acts of assault and battery and the second count sounded in negligence. In each of the two counts the administrator prayed for costs and $100,000 in damages.

The United States moved to dismiss the action on the ground that the suit was barred against the government under the Tort Claims Act for injuries sustained incident to military service, Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and in the alternative the United States moved for summary judgment. The district court granted the government's motion to dismiss holding that Feres applied with equal force to both negligent and intentional torts sustained incident to service.

Plaintiff contends that: the Feres rule does not bar tort claims for intentional acts, and the correctional officers are "law enforcement officers" thus depriving the United States of immunity from the action.[3]

---

1. The jurisdictional statute, 28 U.S.C. § 1346(b), provides in pertinent part:

    The district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. There are, however, exceptions to Section 1346(b) in 28 U.S.C. § 2680, as amended March 16, 1974. The exception pertinent to this case provides:

    The provisions of this chapter and section 1346(b) of this title shall not apply to—

    (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

    The Federal Tort Claims Act in 28 U.S.C. § 2674 also provides in relevant part:

    The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.

2. All three Marine guards were subsequently tried by court martial for the acts alleged in the plaintiff's complaint. One was convicted and two were acquitted.

3. On appeal the plaintiff has dropped the second count sounding in negligence "confessing" that there is no authority to support the cause of action under the Military Claims Act, 10 U.S.C. § 2733.

In *Feres v. United States, supra,* the executrix of a deceased serviceman who had perished by fire in the barracks in which he was quartered filed suit alleging that the United States was derelict in failing to maintain an adequate fire watch and in housing the decedent in barracks the government knew or should have known to be unsafe due to a defective heating plant.[4] Although the cause of action in *Feres* sounded in negligence, the Supreme Court framed the issue in broad terms: "[t]he only issue of law raised is whether the Tort Claims Act extends its remedy to one sustaining 'incident to the service' what under other circumstances would be an actionable wrong." 340 U.S. at 138, 71 S.Ct. at 155. The Court explained that the genesis of the Act sprang from an avalanche of private bills by members of the general public seeking congressional relief for remediless wrongs and not from bills in behalf of members of the armed forces who had previously been provided with a comprehensive system of relief. Unpersuaded by the broad congressional purpose in passing the Act, the Court placed great weight on the unique relationship between the sovereign and its military forces and concluded:

> [T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command.

*Id.* at 146, 71 S.Ct. at 159.

The Supreme Court recently reaffirmed the *Feres* rule in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).[5] There the Court adopted a three part analysis identifying two factors explicitly considered in *Feres* and a third factor announced in a later decision:

> First, the relationship between the Government and members of its Armed Forces is " 'distinctively federal in character' " [340 U.S. at 143, 71 S.Ct. 153], citing *United States v. Standard Oil Co.,* 332 U.S. 301 [67 S.Ct. 1604, 91 L.Ed. 2067] (1947); it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown,* 348 U.S. 110, 112 [75 S.Ct. 141, 143, 99 L.Ed. 139] (1954), namely, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the

---

4. In the same opinion the Supreme Court also decided two other cases involving negligence by military personnel. In *Jefferson v. United States,* 178 F.2d 518 (4th Cir. 1949), the Fourth Circuit refused to hold the United States liable for injury to a serviceman who underwent abdominal surgery in an army hospital, and in another operation eight months later a large towel marked "Medical Department U.S. Army" was discovered in his stomach. The Tenth Circuit, however, recognized a cause of action by an executrix who alleged that a serviceman died as a result of negligent and unskilled medical treatment by army surgeons.

*Griggs v. United States,* 178 F.2d 1 (10th Cir. 1949).

5. In *Stencel, supra,* a captain in the National Guard was permanently injured when the ejection system of his fighter aircraft malfunctioned during a mid-air emergency. Although the plaintiff was awarded a lifetime pension under the Veterans' Benefits Act, he brought a negligence action against, *inter alia,* the United States and the ejection system manufacturer, Stencel. Stencel cross-claimed against the United States for indemnity, but the Supreme Court, relying on *Feres,* barred the third-party indemnity action.

Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ."

*Id.* at 671–72, 97 S.Ct. at 2058. We must therefore consider the facts of the present case within the framework of *Feres-Brown.*

Unrelated to the nature of this cause of action, the relationship between the United States and the military remains unquestionably "distinctively federal in character." In *Feres* the Court stated that it made little sense to allow the geography of the alleged negligence affect the liability of the government to a serviceman who sustained service-connected injuries.[6] 340 U.S. at 143, 71 S.Ct. 153. On this point *Stencel* reasoned:

> The Armed Services perform a unique, nationwide function in protecting the security of the United States. To that end military authorities frequently move large numbers of men, and large quantities of equipment, from one end of the continent to the other, and beyond. Significant risk of accidents and injuries attend such a vast undertaking.

431 U.S. at 672, 97 S.Ct. at 2058. The fortuity of the situs of the tort, Illinois in this case, should not affect the government's liability to its servicemen. We do not see why the rule should be altered because the alleged tort was intentional.

The uniform system of death benefits, 10 U.S.C. § 1475, *et seq.*, is available to survivors of servicemen who die during active duty.[7] Regarding the availability of an alternative system of compensation, the Court in *Stencel* stated: .

> A compensation scheme such as the Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the "protective mantle of the Act's limitation-of-liability provisions." See *Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 115 [94 S.Ct. 2174, 2179, 40 L.Ed.2d 694] (1974). Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, see *Feres,* 340 U.S. at 142–143 [71 S.Ct. at 157], the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries.

431 U.S. at 673, 97 S.Ct. at 2059.

Finally, the effect of the litigation upon military discipline would be equally disruptive whether the action is based on intentional or negligent acts. If the present lawsuit were permitted to go to trial numerous witnesses now scattered throughout the military service would have to be called to testify. *Stencel,* 431 U.S. at 673, 97 S.Ct. 2054.

We conclude the *Feres* holding that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where injuries arise out of or are in the course of activity incident to service" applies with equal vitality to negligent and intentional torts.[8] In the absence of a clear

---

**6.** "[T]he law of the place where the act or omission occurred" governs claims maintained under the Tort Claims Act. 28 U.S.C. § 1346(b).

**7.** The survivors of Stawnychy are eligible to receive compensation equal to six months' pay, but the benefits may not exceed $3,000. 10 U.S.C. §§ 1475 and 1478(a).

**8.** Since the 1950 Supreme Court opinion, other courts have without exception taken the same position. *See James v. United States,* 358 F.Supp. 1381 (D.R.I.1973), aff'd, 530 F.2d 962 (1st Cir. 1976), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn. 1971), aff'd, 455 F.2d 992 (2d Cir. 1972) (per curiam); *Gamage v. United States,* 217 F.Supp. 381 (N.D.Cal.

1962). The reason, of course, for the dearth of reported cases is because prior to the 1974 amendment to Section 2680(h), intentional torts were expressly excluded from the Act. Today the broad exclusion still stands, save certain torts committed by "investigative or law enforcement officers." *See* footnote 9.

In support of his position the plaintiff has been able to cite only one case, *Dinsman v. Wilkes,* 12 How. 390, 53 U.S. 390, 13 L.Ed. 1036 (1851). Although the complaint in *Dinsman* was held to state a cause of action where a flogged seaman brought suit against a superior officer, in the past 128 years the case has never been cited for the proposition that a serviceman is entitled to recover against the United States for intentional torts committed incident

**1158**

congressional command contrariwise, the impact of *Feres* cannot be avoided.[9]

We affirm the judgment of the district court.

AFFIRMED.

to service or that the Federal Tort Claims Act permits the action. In fact, the Supreme Court impliedly limited the decision to situations where a superior officer was sued as a "private person." *See Dalehite v. United States,* 346 U.S. 15, 59, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

**9.** Given our conclusion that the coverage of *Feres* extends to intentional acts, we are not pressed to decide the question of whether the 1974 amendment to the Act, 28 U.S.C. § 2680(h), would alter the result reached here.

Section 2680(h) excludes from the Tort Claims Act claims arising out of assault and battery, but as amended waives the immunity of the United States for assaults and batteries committed by "investigative or law enforcement officers of the United States Government . . . who [are] empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law." The government argued that the correctional officers, or brig guards, did not participate in Stawnychy's arrest, were merely custodians without independent authority to confine individuals, and thus were not "law enforcement officers" empowered to arrest, search or seize within the meaning of the statute. The plaintiff argued otherwise.

We have carefully examined the language and the legislative history of the amendment, and there is nothing that indicates directly or by implication that Congress intended to overrule *Feres. See* S. Rep. No. 93–588, 93d Cong., 1st Sess. 2–3, *reprinted in* [1974] U.S. Code Cong. & Admin. News pp. 2790–91; 120 Cong. Rec. H5285–5288 (daily ed. Mar. 5, 1974); 119 Cong. Rec. S38969 (daily ed. Nov. 30, 1973). *See also* Gitenstein & Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretive Analysis,* 54 N.C.L.Rev. 497, 505–17 (1976).

If Congress had wished to remove the service-connected jurisdictional defense to claims under the Federal Tort Claims Act, it could have easily achieved the result. As the Supreme Court commented in *Feres,* "if we misinterpret the Act, at least Congress possesses a ready remedy." 340 U.S. at 138, 71 S.Ct. at 155. After twenty-seven years, the only Congressional response has been silence.