**James P. BENVENUTI, Plaintiff,**

v.

**DEPARTMENT OF DEFENSE, et al., Defendant.**

**Civ. A. No. 81–1803.**

United States District Court, District of Columbia.

May 29, 1984.

Bruce J. Ennis, Ennis, Friedman, Bersoff & Ewing, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff James P. Benvenuti brings this action for monetary, declaratory, and in-

junctive relief against the United States Department of Defense and Department of the Army, and against seven officers of the Army and Navy in their individual capacities.[1] Currently before the Court is defendants' motion to dismiss, or in the alternative, for summary judgment.[2]

Plaintiff is a physician, formerly serving on active duty with the Army Medical Corps. From August 1978 to May 1980, plaintiff participated in a psychiatric residency program at Walter Reed Army Medical Center in Washington. During that period, the quality of plaintiff's performance was questioned, and on May 30, 1980, plaintiff was dismissed from the program (Defendants' Exhibit ("DX") N at 3). On May 31, plaintiff was reassigned to the Pediatrics Clinic at DeWitt Army Hospital, Fort Belvoir, Va. Once again, plaintiff's performance was drawn into question, and on November 2, he was reassigned to the Family Practice Clinic. In February 1981, plaintiff was relieved of his duties there and reassigned to non-clinical duties. Plaintiff's performance in this May 1980-February 1981 period is the subject of two Officer Evaluation Reports ("OERs") (DX G, B), which are at issue in this case.

On February 23, 1981, plaintiff's commanding officer at Fort Belvoir, defendant Doane, ordered plaintiff to undergo psychiatric evaluation at the Fort Belvoir Community Mental Health Activity. After a series of psychological tests and interviews, plaintiff was certified as having "no disqualifying mental disease or condition sufficient to warrant disposition through medical/psychiatric channels...." (DX D at 86).

On March 13, 1981, defendant Doane ordered plaintiff to undergo a complete psychiatric evaluation at the National Naval Medical Center ("NNMC") in Bethesda, Md. On May 19, a NNMC Medical Board diagnosed plaintiff as suffering "borderline personality disorder," and recommended his administrative separation from active duty status (DX I at 14). On August 12, plaintiff was discharged from NNMC.

Meanwhile, in June 1981, an Army Promotion Board, on the basis of the OERs noted above, removed plaintiff from the lieutenant colonel promotion list (DX C). In July, the Commander at DeWitt Army Hospital recommended that plaintiff not receive Medical Special Pay, and that recommendation was accepted by the Surgeon General in August (DX E).

On August 18, plaintiff was ordered to undergo further psychiatric evaluation at the Eisenhower Army Medical Center ("EAMC"), Fort Gordon, Ga. On August 25, this Court granted plaintiff's request for a temporary restraining order against the transfer, but on September 11, denied his motion for a preliminary injunction. Plaintiff was admitted to EAMC on September 16 (DX G).

On October 24, an EAMC Medical Board issued its findings. The Board, noting that plaintiff had been "referred for evaluation because of inability to perform duties," diagnosed plaintiff as suffering a "paranoid personality disorder," and recommended that he be considered for administrative separation from active status (DX H at 3). Plaintiff was discharged from EAMC on November 16.

---

**1.** At the time of the events in question, defendant Bernhard Mittemeyer was Commanding General, Walter Reed Army Medical Center, Washington, D.C.; defendant David Doane, Commander, U.S. Army Medical Department Activity ("MEDDAC"), Fort Belvoir, Va.; defendant Matthew Barlow, later Commander, MEDDAC; defendant Nikita Tregubov, Chief, Department of Medicine, MEDDAC; defendant Arthur Andreasen, Chief, Department of Pediatrics, MEDDAC; defendant Orren Royal, Chief of Psychiatry, National Naval Medical Center, Bethesda, Md.; and defendant R.E. Bullock, Chief of

Inpatient Psychiatry, National Naval Medical Center. *See* Amended Complaint ¶¶ 5–11.

**2.** On February 14, 1984, the Court pursuant to Fed.R.Civ.P. 12(b)(6) notified the parties that pertinent portions of defendants' motion to dismiss would be treated as a motion for summary judgment. On February 29, 1984, the parties by joint stipulation stated that neither intended to make further submissions as permitted under Rule 12.

On December 21, after considering plaintiff's submissions on the matter, the Executive Committee at DeWitt Army Hospital recommended that plaintiff be denied clinical practice privileges. That recommendation was approved by the new DeWitt commander (defendant Barlow) on December 23.

In March 1982, plaintiff sought review of the adverse OERs; his appeal was denied by an Army Special Appeals Board on August 9. On March 1, defendant Barlow formally recommended that plaintiff be involuntarily released from active duty (DX D at 7–8). On August 13, the Army Active Duty Board accepted that recommendation, and plaintiff was released on November 11. Plaintiff's request for preliminary relief against that release was denied by both this Court and the Court of Appeals.

On August 16, 1982, plaintiff filed an application with the Army Board for Correction of Military Records ("Board") for review of all these matters. The Board denied his application without a hearing on March 30, 1983 (DX A).

Plaintiff in this action makes a number of challenges to these orders, principally concerning the legality of his assignments to NNMC and to EAMC for psychiatric evaluation. Plaintiff seeks damages for alleged constitutional and common law torts arising from the hospitalizations and preparation of the OERs, and declaratory and injunctive relief with respect to a number of administrative actions taken by defendants. Defendants challenge both the Court's jurisdiction over and justiciability of plaintiff's claims, and in addition urge that the military internal review process is dispositive of the case. Upon consideration, the Court concludes that the damages claims should be dismissed, but that the remaining claims raise issues that should be the subject of further evaluation by the Board.

### A. Monetary Relief: Constitutional and Common Law Tort Claims

Plaintiff's tort claims, as noted, center on his two "hospitalizations," and on the contents of the OERs. Plaintiff claims that he was "unconstitutionally deprived of liberty" in that he was "committed" to NNMC and EAMC without first receiving procedural protections guaranteed by the Due Process Clause.[3] In addition, plaintiff claims that the hospitalizations constituted the common law tort of "false imprisonment" on the part of five of the named defendants. Plaintiff also alleges that defendants Andreasen, Tregubov, and Barlow "libeled" him in preparing the OERs. Plaintiff's prayer for relief makes no distinctions among the defendants; he urges that the Court find the agency and individual defendants "jointly and severally" liable for both the constitutional and common law torts. Disposition of defendants' motion, however, requires the Court to examine its jurisdiction over each class of defendant.

### 1. Subject Matter Jurisdiction: Departments of Defense and Army

A fundamental jurisdictional principle governs plaintiff's claims against the agency defendants: the United States (and its agencies, including DOD and the Army) "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain a suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). *See also United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Lombard v. United States*, 690 F.2d 215, 218 (D.C.Cir.1982), *cert. denied* —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983). Consequently, a damages suit against the United States or its agencies cannot be maintained unless there exists an "unequivocally expressed" statutory waiver of sovereign immunity. *See United*

---

**3.** Plaintiff characterizes these events as "involuntary commitments," while defendants style them mere "assignments." These labels reflect the parties' respective positions on the merits; for convenience's sake, the Court will refer to them as "hospitalizations."

*States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Lombard v. United States, supra*, 690 F.2d at 218. None of the statutes cited by plaintiff—the general federal question provision, 28 U.S.C. § 1331, and the All Writs and Declaratory Judgment Acts, 28 U.S.C. §§ 1651, 2201–02 —nor the Constitution itself—operate as such waivers. *See Keene Corp. v. United States*, 700 F.2d 836, 838 n. 3 (2d Cir.), *cert. denied* — U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.), *cert. denied* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *Navy, Marshall & Gordon v. United States Int'l Development-Cooperation Agency*, 557 F.Supp. 484, 488 (D.D.C.1983).

■ The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, does operate as a waiver of sovereign immunity, but even brief review reveals its inapplicability here. First, although the Act does permit suit against the United States for the tortious conduct of its employees, the Act expressly excepts from waiver suits for libel and false imprisonment. *See* 28 U.S.C. § 2680(h).[4] The Act also does not encompass suits alleging constitutional torts. *See Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir.1978); *Diminnie v. United States*, 522 F.Supp. 1192, 1197

(E.D.Mich.1981); *Liuzzo v. United States*, 508 F.Supp. 923, 933 (E.D.Mich.1981).

■ Second, even if plaintiff's claims fall within the classes contemplated by the Act, plaintiff has not satisfied the absolute " 'jurisdictional' prerequisite to suit" in federal court established by the Act. Plaintiff has failed to demonstrate or even allege that he has filed an administrative claim with the "appropriate federal agency," as required by § 2675(a) and necessary to provide subject matter jurisdiction in this Court. *See Odin v. United States*, 656 F.2d 798, 802 (D.C.Cir.1981); *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 104–05 n. 9 (2d Cir. 1981).

■ A final bar to finding waiver of immunity lies in the special interpretation long given the Act in the military context. In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen when the injuries arise out of or in the course of activity incident to military service." *Id.* at 146, 71 S.Ct. at 159.[5] There is no question that plaintiff's alleged injuries "arose in the course of military service," and that therefore the *"Feres* doctrine" provides further grounds for dismissal. In short, plaintiff has not demonstrated the necessary waiver

---

**4.** There is of course no suggestion that § 2680(h)'s waiver of immunity for claims of false imprisonment arising from the "acts or omissions of *investigative* or *law enforcement* officers of the United States Government" (emphasis supplied) is of any applicability here.

**5.** The *Feres* Court identified three factors underlying its conclusion that the Act does not encompass "service-connected" suits: 1) the "distinctively federal nature" of the relationship between the federal government and the military; 2) the existence of an alternative compensation scheme for injured servicemen; and 3) the costs of judicial intrusion into the "peculiar and special relationship of the soldier to his superiors, [and] the effect of the maintenance of such suits on discipline." *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). *See generally Lombard v. United States, supra*, 690 F.2d at 218–19. This latter factor—the risks to military discipline created by judicial inter-

vention—"serves largely if not exclusively as the predicate for the *Feres* doctrine," *Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir.1980), and is given substantial attention by courts evaluating other types of claims arising in a military setting. For example, the Supreme Court treated the military discipline concern as a "special factor counselling hesitation" in establishing a *Bivens*-type remedy for enlisted men against their superiors. *See Chappell v. Wallace*, — U.S. ——, 103 S.Ct. 2362, 2364, 76 L.Ed.2d 586 (1983) (citation omitted). Similarly, several Courts of Appeal address the problem as part of a special "reviewability" or "justiciability" analysis in cases seeking injunctive relief against military orders or regulations. *See infra* at 354–355 & n. 6. These decisions reflect a general judicial perception best captured by Justice Jackson's famous observation: "judges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

of immunity, and the Court must dismiss his damages claims against the agency defendants for lack of subject matter jurisdiction.

2. *Subject Matter Jurisdiction: Defendants Bernhard Mittemeyer, David Doane, Matthew Barlow, Nikita Tregubov, Arthur Andreasen, Orren Royal, R.E. Bullock*

■ The *Feres* doctrine is not limited to suits against the United States; its principles also extend to cases where individual members of the military are named as defendants. *See Chappell v. Wallace, supra,* 103 S.Ct. at 2367; *Gaspard v. United States,* 713 F.2d 1097, 1103 (5th Cir.1983); *Lombard, supra,* 690 F.2d at 227; *Jaffee v. United States,* 663 F.2d 1226, 1234 (3d Cir.1981) (*en banc*) *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Once again, only brief discussion is necessary, for review of the cases involving such claims quickly compels the conclusion that none of the theories of liability advanced by plaintiff survives defendants' motion to dismiss.

■ Plaintiff's constitutional tort claim is barred by the Supreme Court's recent decision in *Chappell v. Wallace.* In *Chappell,* a unanimous court established a *"per se* prohibition on the filing of *Bivens*-type actions by servicemen against their superiors." *Mollnow v. Carlton,* 716 F.2d 627, 630 (9th Cir.1983), *cert. denied* —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). The Court held that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." 103 S.Ct. at 2368. Plaintiff correctly observes that *Chappell* involved claims by *enlisted* men against their commanders, but his attempt to distinguish *Chappell* on those grounds is unpersuasive. This Court expressly rejected that distinction in *Bois v. Marsh,* CA No. 80–1030 (D.D.C. August 29, 1983) (Johnson, J.), noting that "whether the relationship is that of enlisted personnel-officer or junior officer-senior officer, the identical need for authority and discipline exists."

*Id.,* slip op. at 6 n. *. In short, *Chappell* is controlling, and plaintiff's constitutional tort claim against the defendants in their individual capacities must be dismissed. Similarly, the "official capacity" claims are also dismissed. *See Lombard, supra,* 690 F.2d at 227.

■ *Feres* principles also require dismissal of plaintiff's common law false imprisonment and defamation claims. This and other courts—even before *Chappell* —have rejected any distinction for *Feres* purposes between intentional common law torts and other types of tortious conduct. *See, e.g., Jaffee v. United States, supra,* 663 F.2d at 1235; *Citizens National Bank of Waukegan v. United States,* 594 F.2d 1154, 1157 & n. 8 (7th Cir.1979); *Bois v. Marsh, supra,* slip op. at note *; *Misko v. United States,* 453 F.Supp. 513, 514 (D.D. C.1978). The Third Circuit, sitting *en banc* in *Jaffee v. United States,* observed that "litigation over intentional torts would appear to disrupt military discipline and undermine military decision-making as much as" other types of litigation. 663 F.2d at 1235. The *Chappell* decision only reinforces this conclusion.

The Court must therefore dismiss plaintiff's common law tort claims against the seven individual defendants, in both their individual and official capacities. *See Lombard, supra,* 690 F.2d at 127. In summary, all of plaintiff's damages claims are dismissed; the remaining claims are those for declaratory and injunctive relief.

B. *Declaratory and Injunctive Relief*

Plaintiff's other claims basically arise from the circumstances surrounding his 1981 hospitalizations. Plaintiff seeks a declaration that the hospitalizations violated both Army Regulation 600–20 and the Due Process Clause of the Fifth Amendment, and that certain administrative actions, including preparation of two OERs, and promotion and medical special pay determinations, were improperly affected or "tainted" by the illegal hospitalizations. Plaintiff asks the Court for injunctive relief with respect to expungement of his

records, restoration to active duty status, and restoration of medical credentials and special pay. In essence, plaintiff is asking this Court to review and reverse a number of military personnel determinations and orders.

The concerns articulated in *Feres* and *Chappell* with respect to judicial intrusion into military affairs do not, of course, dissipate when a court's focus shifts from monetary to other forms of relief. Indeed, the parties here do not agree on an appropriate standard of review, and offer authorities for standards ranging from *de novo* to absolute nonreviewability of the challenged orders. In particular, defendants rely on the Fifth Circuit decision in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), for the proposition that certain "military personnel decisions" are simply "not reviewable" by a federal court. The decision in *Mindes v. Seaman* spawned a series of cases in the Courts of Appeal involving the validity and application of a preliminary "justiciability"

analysis in military matters. *See, e.g., Gonzalez v. Department of the Army*, 718 F.2d 926, 929–30 (9th Cir.1983); *Rucker v. Secretary of the Army*, 702 F.2d 966, 969–70 (11th Cir.1983); *Nieszner v. Mark*, 684 F.2d 562, 563–64 (8th Cir.1982), *cert. denied sub nom. Nieszner v. Orr*, 460 U.S. 1022, 103 S.Ct. 1273, 75 L.Ed.2d 494 (1983); *Dillard v. Brown*, 652 F.2d 316, 322–23 (3d Cir.1981); *Lindenau v. Alexander*, 663 F.2d 68, 71–72 (10th Cir.1981). *See generally* Note, *Judicial Review of Constitutional Claims Against the Military*, 84 Colum.L.Rev. 387 (1984).[6]

In considering the reviewability issue in this case, it is important to recognize that the Court is not writing on a clean slate, and that a second line of cases is relevant. Plaintiff brought all of these matters, including his constitutional claims, before the Army Board for Correction of Military Records. The Court on October 13, 1983, granted plaintiff leave to amend his com-

---

**6.** The Fifth Circuit summarized the *Mindes* test for "determining whether a contested internal military decision should be subjected to judicial review:"

> "*Mindes v. Seaman* requires a court contemplating review of an internal military determination first to determine whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and whether intraservice remedies have been exhausted. If so, the court is then to weigh the nature and strength of the challenge to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision. 453 F.2d at 201–202."

*Nesmith v. Fulton*, 615 F.2d 196, 201 (5th Cir.1980). Application of the *Mindes* "reviewability" test either directly or indirectly in this case is far from clear. First, that "while the District of Columbia Circuit has not rejected the *Mindes* test by name, it has rejected the nation that a court should conduct a preliminary screening of military cases to determine which are appropriate for judicial review." Note, *supra*, 84 Colum. L.Rev. at 403 (citing, *inter alia, Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979) and *Knehans v. Alexander*, 566 F.2d 312 (D.C.Cir.1977), *cert. denied* 435 U.S. 995, 988 S.Ct. 1646, 56 L.Ed.2d 83 (1978). Second, even if *Mindes* is good law in this circuit, the courts applying it do not adequately address the relationship of the *Mindes* test and the standards governing judicial review of internal military appeals

boards. The *Mindes* test *does* require exhaustion of military administrative remedies, including appeal to the military corrections board, *see Von Hoffburg v. Alexander*, 615 F.2d 633, 638–41 (5th Cir.1980), but the cases do not squarely consider the proper effect given the determinations resulting from those appeals. *See, e.g., Rucker v. Secretary of the Army, supra*, 702 F.2d at 968–69 n. 5; *Woodard v. Marsh*, 658 F.2d 989, 991 & n. 1 (5th Cir.1981) *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *Von Hoffburg v. Alexander, supra*. As developed below, decisions of military corrections boards are subject to limited "arbitrary and capricious" review by the courts, and, unlike the situation in *Rucker v. Secretary of the Army*, the Board here did consider all of plaintiff's claims. Consequently, in view of the cloudy status of the *Mindes* test in this circuit, and of the nature of the Board's decision, the Court concludes that the "Board review" and not the *Mindes* standard governs disposition of plaintiff's claims. It should be noted that both the Board review and *Mindes* tests (and for that matter, the *Feres* doctrine) are manifestations of the same policy, *i.e.*, that courts should hesitate before examining internal military personnel decisions. *Cf. Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977) (courts should avoid "second-guessing military orders" and "requir[ing] members of the Armed Services to testify in court as to each other's decisions and actions").

plaint to reflect the Board's determination. In this posture, the reviewability issue is narrowed; the question now is the effect in this proceeding of the Board's rejection of plaintiff's claims. Resolution of this issue requires a brief review of the functions and powers of the Board, and of the role of a court in reviewing matters previously passed upon by the Board. The Court concludes that while it does not write on a clean slate, its co-author—the Board—has not written enough.

### 1. *The Army Board for Correction of Military Records: Generally*

By statute, the Secretary of each military department, through an appointed board, "may correct any military record of that department when he considers it necessary to correct an error or remove injustice." 10 U.S.C. § 1552(a). Regulations establishing and governing the Army Board are found at 32 C.F.R. § 581.3 (1983). The Board's powers are quite broad; for example, the Board may "order retroactive back pay and retroactive promotion." *Chappell, supra,* 103 S.Ct. at 2367 (citing 10 U.S.C. § 1552(c)). *See generally Baxter v. Claytor,* 652 F.2d 181, 185 (D.C. Cir.1981); *Knehans v. Alexander, supra,* 566 F.2d at 315; *Neal v. Secretary of the Navy,* 639 F.2d 1029, 1042–43 (3d Cir.1981); *Sanders v. United States,* 594 F.2d 804, 811–14, 219 Ct.Cl. 285 (1979). More importantly:

> "Once a plaintiff has sought relief from the Corrections Board, *such plaintiff is bound by that board's determination unless* he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was *arbitrary,* or *capricious,* or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced." *Neal v. Secretary of the Navy, supra,* 639 F.2d at 1037 (quoting *Sanders v. United States, supra,* 594 F.2d at 811) (emphasis supplied).

The Supreme Court, the Court of Appeals, this Court and others have repeatedly held that the arbitrary and capricious standard governs judicial review of Board determinations. *See, e.g., Chappell, supra,* 103 S.Ct. at 2367; *Knehans v. Alexander, supra,* 566 F.2d at 315; *Greig v. United States,* 640 F.2d 1261, 1266–67, 226 Ct.Cl. 258 (1981) *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Moore v. Marsh,* 568 F.Supp. 785, 788 (D.D.C.1983).

Plaintiff, however, contends that the arbitrary and capricious standard does not control his challenge to the Board's March 1983 decision:

> "Although the Board apparently concluded that plaintiff's commitment was appropriate and did not deprive him of constitutional rights, the Court need not defer to the Board's ruling on those legal questions. The Administrative Procedure Act expressly authorizes 'the reviewing court' to 'decide all relevant questions of law' and to 'interpret constitutional and statutory provisions.' 5 U.S.C. § 706. Because the questions of the legality and constitutionality of plaintiff's involuntary commitment are at the heart of plaintiff's complaint, this case is not one that primarily seeks review of an agency's ruling and that requires application of the arbitrary and capricious standard." Plts.Mem.Pts.Auth.Opp. at 19.

Plaintiff's implicit suggestion that constitutional challenges to military orders are beyond the ken of the Board and therefore properly subject to *de novo* judicial review is intuitively appealing and has some support in the case law. *See, e.g., Glines v. Wade,* 586 F.2d 675, 678 (9th Cir.1978), *rev'd on other grounds sub nom. Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980). The Supreme Court has not addressed the question, *see id.* at 352, 100 S.Ct. at 598 n. 6, but the law in this circuit is directly contrary. Indeed, the Court of Appeals remanded a case to the Navy Board specifically for the "Board's consideration of [a] constitutional challenge...." *Baxter v. Claytor, supra,* 652 F.2d at 185 n. 3, 186 (emphasis

supplied). *See also Bard v. Seamans,* 507 F.2d 765, 770 (10th Cir.1974) (Air Force Board can "consider even constitutional defects" in discharge); 32 C.F.R. § 581.3(c)(5)(v) (requiring Army Board to give reasons for rejecting "applicant's claims of *constitutional,* statutory, and/or regulatory violations") (emphasis supplied). Consequently, plaintiff cannot escape the arbitrary and capricious standard by relying on allegations of unconstitutional conduct by military officials. Plaintiff's request for declaratory and injunctive relief thus turns on an evaluation of the Board's March 1983 ruling.

### 2. The Board's Decision

 It bears repeating that plaintiff, in the form of a lengthy brief prepared by counsel, presented to the Board all the claims raised here. *See* DX A at 14–59. After reviewing plaintiff's submissions, and advisory opinions obtained from the Special Review Board and the Surgeon General, *see* 32 C.F.R. § 581.3(c)(5)(v), the Board concluded:

> "[t]here is no evidence to show that he was denied any constitutional rights in his referral for psychiatric evaluation, relief from duty as a medical officer and release from active duty. He was suspected of having a psychiatric problem and as a member of the Army it was appropriate for the Hospital Commander to refer him for psychiatric evaluation." DX A at 7.

Accordingly, the Board denied the application because plaintiff "failed to present sufficient relevant evidence to demonstrate the existence of probable material error or injustice to warrant a formal hearing." *Id.* at 8; *cf.* 32 C.F.R. § 581.3(c)(5)(ii).

Although Army Regulations require the Board only to make "a brief statement of the grounds for denial of an application," *id.* at § 581.3(c)(5)(iv)–(v), the Board's statement here is exceedingly brief. Defendants' acknowledgement that "the board did not delve into an analysis of the statutes and regulations involved," Def.Mem.Pts. Auth. at 56, is particularly telling in light of the fact that plaintiff's application

hinged on *legal* as well as the factual questions typically raised in matters before the Board. Similarly, the advisory opinion from the Surgeon General, relied upon by the Board, simply concluded that the hospitalizations "were accomplished within the scope and intent of U.S. Army regulations," (DX A at 9), without identifying any of those regulations.

"Meaningful judicial review" in this posture, even under a deferential arbitrary and capricious standard, is difficult. *See Matlovich v. Secretary of the Air. Force,* 591 F.2d 852, 857 (D.C.Cir.1978). This Court is not the first to confront a Board ruling where the Board "did not specify [the] legal grounds for its decision." *Werner v. United States,* 642 F.2d 404, 408, 226 Ct.Cl. 462 (1981). *See also Matlovich v. Secretary of the Air Force, supra,* 591 F.2d at 856, 859 n. 16; *Hary v. United States,* 618 F.2d 704, 709, 223 Ct.Cl. 10 (1980); *Sanders v. United States, supra,* 594 F.2d at 809. As the Court of Claims concluded:

> "In these circumstances we must either canvass for ourselves the evidence in the administrative record in the light of the arguments and analyses offered by the parties, or we can remand to the military department for clarification or further inquiry." *Hary v. United States, supra,* 618 F.2d at 709–10.

The Court concludes that remand is appropriate here. The Court is particularly interested in "clarification or further inquiry" with respect to Army regulations governing medical evaluation and hospitalization of personnel on active duty. Army Regulation 600–20 ¶ 5–29 permits a commanding officer to order a subordinate to "submit to medical care considered necessary to *preserve his life, alleviate undue suffering,* or *protect or maintain the health of others.*" (DX J) (emphasis supplied). Plaintiff vigorously asserts that his hospitalizations were not based on any of the three permissible purposes, and defendants' attempt to fit the orders within the regulation is unpersuasive. Indeed, defendants note that plaintiff was "examined

to determine whether discharge for medical disability was required (in lieu of separation for substandard performance).'' Def. Statement of Material Facts at ¶ 8. At minimum it can be said that plaintiff has raised a question as to defendants' compliance with the letter of ¶ 5–29.

At the same time, however, the Court has some doubt as to whether ¶ 5–29 is the exclusive source of a commanding officer's authority to order psychological evaluation of a subordinate. Neither party has addressed any regulation governing the process leading to administrative separation of an officer. The distinction between separation based on ''medical disability'' and ''substandard performance,'' and the procedures involved, was at issue nearly three years ago in the preliminary relief aspect of this case, and would seem to remain relevant today. Army Regulation 600–35 §§ 4–6, 4–7 provides that a commanding officer may refer a subordinate for medical evaluation when there is question as to the subordinate's ''physical ability to perform the duties of his office, grade, rank, or rating.'' ''Character and behavior disorders ... render an individual *administratively* unfit rather than unfit because of physical disability [and] will be dealt with through *appropriate administrative channels*.'' *Id.* at 40–501 ¶ 3–31. Neither the parties nor the Board considered the interplay, if any, between the administrative separation regulations and ¶ 5–29; it is plausible, for example, that disposition through ''administrative channels'' contemplates further psychological evaluation and treatment outside of or consistent with ¶ 5–29. In any event, the Court believes initial Board review of all possibly pertinent regulations is appropriate. Similarly, as in *Baxter v. Claytor, supra,* the Board should consider plaintiff's constitutional challenge should it remain satisfied that the hospitalizations did not violate any regulations. The Court is aware that the Board frequently relies upon advisory opinions when technical matters are at issue; perhaps the Board should solicit advice from the Judge Advocate General on the due process claims advanced by plaintiff.

Plaintiff filed this case in 1981, and with this memorandum, the record continues to grow. A remand, of course, only postpones final resolution; nonetheless, the Court believes remand is appropriate. Whether the setting be a *Feres*-type case, a *Mindes*-type case, or review of a Correction Board, courts have stressed the undesirability of judicial intrusion into military personnel decisions, and judicial inquiry into the ''peculiar and special relationship of the soldier to his superiors,'' *United States v. Brown, supra,* 348 U.S. at 112, 75 S.Ct. at 143. The Court is hesitant to act without further explication by the Board of a narrow aspect of that relationship, *i.e.,* under what circumstances and for what reasons a commander may direct a subordinate to undergo medical evaluation. Moreover, the Court believes it appropriate to further solicit the ''views [of] the military authorities,'' *Wallace v. Chappell, supra,* 661 F.2d at 734, before considering plaintiff's request that the Court extend constitutionally-based procedural requirements into that relationship.

Accordingly, defendants' motion to dismiss, or, in the alternative, for summary judgment, is granted in part and denied in part. The case is remanded to the Army Board for Correction of Military Records for further proceedings consistent with this opinion.