**James P. BENVENUTI, Plaintiff,**

v.

**DEPARTMENT OF DEFENSE, et al., Defendants.**

**Civ. A. No. 81–1803.**

United States District Court, District of Columbia.

July 18, 1985.

Bruce J. Ennis, Ennis, Friedman, Bersoff & Ewing, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Major Craig P. Niederpruem, Dept. of Army, Office of Judge Advocate General, Washington, D.C., for defendants.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff James P. Benvenuti originally brought this action for monetary, declaratory, and injunctive relief against the United States Department of Defense and Department of the Army, and against seven officers of the Army and Navy in their individual capacities. In an earlier opinion, the Court dismissed all of plaintiff's damages claims, and remanded to the Army Board for Correction of Military Records (Board) for further inquiry before proceeding with plaintiff's claims for declaratory and injunctive relief. *Benvenuti v. Department of Defense,* 587 F.Supp. 348 (D.D.C.1984). The Board has completed its inquiry and presently before the Court is defendants' renewed motion for summary judgment.

The facts of this case are set out in detail in the earlier opinion of the Court. *Id.,* at 350–351. For present purposes, however, the relevant facts are that plaintiff was a physician formerly serving on active duty with the Army Medical Corps. Beginning in August 1978, plaintiff began a series of 3 military assignments, each of which led to plaintiff's performance being questioned followed by reassignment. Finally, in February 1981, plaintiff was reassigned to nonclinical duties. Plaintiff's performance from May 1980 to February 1981 is the subject of two Officer Evaluation Reports (OER's) which are at issue in this case.

On February 23, 1981, plaintiff's commanding officer at Fort Belvoir ordered plaintiff to undergo psychiatric evaluation at the Fort Belvoir Community Mental Health Activity. After a series of psychological tests and interviews, plaintiff was certified as having "no disqualifying mental disease or condition sufficient to warrant disposition through medical/psychiat-

ric channels ..." (Defendants' Exhibit (DX) D at 86[1]).

On March 13, 1981, plaintiff was ordered to undergo a complete psychiatric evaluation at the National Naval Medical Center (NNMC) in Bethesda, Maryland. On May 19, a NNMC Medical Board diagnosed plaintiff as suffering "borderline personality disorder," and recommended his administrative separation from active duty status. (DX I at 14). Plaintiff was discharged from NNMC on August 12.

In June, 1981, an Army Promotion Board, on the basis of the OER's noted above, removed plaintiff from the lieutenant colonel promotion list. (DX C). In July, the Commander at DeWitt Army Hospital recommended that plaintiff not receive Medical Special Pay, and that recommendation was accepted by the Surgeon General in August. (DX E).

On August 18, plaintiff was ordered to undergo further psychiatric evaluation at the Eisenhower Army Medical Center (EAMC), Fort Gordon, Georgia. Plaintiff was admitted to EAMC on September 16. (DX G). On October 24, the EAMC Medical Board, noting that plaintiff had been "referred for evaluation because of inability to perform duties," diagnosed plaintiff as suffering a "paranoid personality disorder," and recommended that he be considered for administrative separation from active status. (DX H at 3). Plaintiff was discharged from EAMC on November 16.

In March 1982, plaintiff sought review of the adverse OER's; his appeal was denied by an Army Special Appeals Board on August 9. On August 16, 1982, plaintiff filed an application with the Board for review of all these matters. The Board denied his application without a hearing on March 30, 1983. (DX A). On November 11, 1982, plaintiff was released from the Army.

As previously noted, the only remaining claims are plaintiff's claims for declaratory and injunctive relief. These claims basically arise from the circumstances surrounding plaintiff's 1981 hospitalizations. Plaintiff seeks a declaration that the hospitalizations violated both Army Regulation 600–20, and the Due Process Clause of the Fifth Amendment, and that certain administrative actions, including preparation of two OER's, and promotion and medical special pay determinations, were improperly affected or "tainted" by the illegal hospitalizations. Plaintiff asks the Court for injunctive relief with respect to expungement of his records, restoration to active duty status, and restoration of medical credentials and special pay.

In remanding these claims to the Board, the Court was specifically "interested in 'clarification or further inquiry' with respect to Army regulations governing medical evaluation and hospitalization of personnel on active duty," *Benvenuti*, at 356, including a "review of all possibly pertinent regulations" and a determination of "under what circumstances and for what reasons a commander may direct a subordinate to undergo medical evaluation." *Id.* at 357. Further, the Court ordered the Board to "consider plaintiff's constitutional challenge should it remain satisfied that the hospitalizations did not violate any regulations." *Id.* The Court suggested that "the Board should solicit advice from the Judge Advocate General on the due process claims advanced by plaintiff." *Id.*

On October 31, 1984, the Board issued a "Memorandum of Consideration" which, after addressing the concerns of the Court, found that the Army did not violate its own regulations nor infringe upon plaintiff's constitutional rights when it ordered him to submit to psychiatric evaluation. Administrative Record (A.R.) at 7–9. These determinations were in large part based on opinions from the Office of the Judge Advocate General (OTJAG) and the Office of the Surgeon General (OSG) which were incorporated by reference into the Board's decision. A.R. at 2. The OTJAG opinion, while not performing a fact finding func-

---

1. The notation DX is used only with those exhibits submitted with defendants' original motion for summary judgment.

tion, presented a legal analysis of applicable Army regulations and outlined varying situations in which Army regulations permit the hospitalization of a serviceman.

The Board relied upon the OTJAG analysis and, in alternative findings, determined that there was ample justification, pursuant to military regulations, for hospitalizing plaintiff. First, the Board found that there was no evidence that plaintiff did not consent to the hospitalizations or contest the various medical procedures, pointing specifically to the absence of any record of complaint filed pursuant to grievance procedures provided by the Joint Commission on Hospital Accreditation Standards. In view of this finding, the Board concluded that plaintiff had implicitly consented to the hospitalizations and no military regulations had been violated.

Alternatively, the OTJAG opinion concluded that, even if plaintiff did not consent to the various hospitalizations, Army regulations authorize a commander to "order the hospitalization of any member of his command or order him to submit to a medical examination when indicated," without medical board approval, even "if such hospitalization or examination is not 'necessary to preserve his life, alleviate undue suffering, or protect or maintain the health of others.'" *See* ¶¶ 5–29, Army Regulation 600–20, A.R. at 20. The OTJAG opinion concluded that Army regulations permit psychiatric evaluation and hospitalization to be summarily ordered for determining a soldier's fitness for duty, so long as the individual was not confined to a "closed ward," defined as wards which patients are not permitted to leave without escort. A.R. at 21. The Board found that plaintiff's hospitalizations had been ordered by his commanding officer for determining his fitness for duty and that there was ample foundation to believe that plaintiff had a mental illness which precluded satisfactory duty performance, based in part on plaintiff's statements that he was subject to electronic surveillance, was being tested with unusual cases by, among others, the CIA, and was performing unprofessionally his clinical duties. A.R. at 8.

The Board also found that plaintiff had not been kept in a closed ward, relying upon comments submitted by the OSG and the Chief, Department of Psychiatry, Walter Reed Army Medical Center that the two hospitals at which the plaintiff was treated did not have "closed" wards as the term is being applied in this case. A.R. at 7, 66. The OSG memorandum concluded that "[t]here is nothing in the record to indicate that the [plaintiff] was put in seclusion, isolated, or had a loss of individual rights as a matter of routine." A.R. at 66. This memorandum also indicated that the military had stopped using "closed" wards at the time of plaintiff's hospitalizations. *Id.*

The OTJAG opinion, in addressing the constitutional issues, concluded that:

[I]nvoluntary hospitalization and medical evaluation in the military, where dictated by military necessity or required by law or regulation, are constitutionally permissible without the requirement of a hearing, given the compelling need of the Army to ensure that its members are fit for military duty and the enormous administrative burden that would be placed on the Army if hearings were required.

A.R. at 22. The conclusion was reached after careful analysis of the applicable case law and was predicated on the principle that there are "differences between military and civilian life and the constitutional standards to be applied to each." *The Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C.Cir.1975). The Board adopted the OTJAG conclusion. A.R. at 2, 7.

■ As the Court concluded in its earlier opinion, the scope of its review of the Board's decision, including plaintiff's constitutional claims, is governed by the arbitrary and capricious standard. *Benvenuti*, slip op. at 12–15. No challenge to this decision is mounted in the renewed motion for summary judgment or plaintiff's opposition. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Association, Inc.*

*v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The Court's role is to determine " 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *State Farm*, 103 S.Ct. at 2867 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ The Court finds that the Board's determination that there was ample justification, pursuant to military regulations, for hospitalizing plaintiff was supported by the evidence and was not arbitrary or capricious. The Board's conclusion was supported by both the law and the facts. First, the Board properly relied upon the detailed historical analysis of Army regulations governing medical evaluation and treatment of active duty Army members provided by the OTJAG which outlined various scenarios whereby an individual could be ordered to undergo psychiatric evaluation. Second, the Board received factual data involving plaintiff's hospitalizations from various sources. It learned from the OSG that there was no evidence to demonstrate that plaintiff contested the hospitalizations. The Board was also told by the OSG that closed wards were not used at the two hospitals where plaintiff was treated. The Board pointed to specific facts concerning plaintiff's unprofessional medical behavior that prompted the first two hospitalizations and portions of the May 12, 1981 NNMC medical reports that led to the third hospitalization at Fort Gordon. In view of the legal and factual foundation relied upon by the Board, the Court cannot say that the Board's decision was either arbitrary or capricious.

■ The Court also finds that the Board's determination that involuntary hospitalization and medical evaluation of military personnel are constitutionally permissible where dictated by the necessity of ensuring members are fit for military duty, and the decision that plaintiff was hospitalized to determine his fitness for military duty, was not arbitrary and capricious. Certainly, in a civilian context, involuntary hospitalizations in non-emergency situations ordinarily are impermissible absent a hearing. *See Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). Courts have recognized that, while military personnel are entitled to constitutional protections, there are "differences between military and civilian life and the constitutional standards to be applied to each." *Committee for GI Rights*, 518 F.2d at 474 (holding that warrantless drug inspections of soldiers' property and person as well as imposing non-medical administrative remedies, including confinement in a live-in/work-out rehabilitation facility, without a hearing is constitutional). The Court is satisfied that the Board has established a military necessity for the involuntary hospitalizations and that the Army need not provide a soldier with a hearing prior to such hospitalizations. "To require the Army to provide a GI with a hearing prior to the imposition of any action which would affect his liberty or property interests would seriously erode the Army's ability to maintain a disciplined and ready fighting force." *Id.* at 479.

Accordingly, defendants' renewed motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.