Clifford LEONARD et al.

v.

Dudley MATTOS.

No. 83–460–Appeal.

Supreme Court of Rhode Island.

May 28, 1986.

Charles J. Ajootian, Providence, for plaintiff.

William C. Maaia, Maura C. Travers, Dept. of Business Regulations, Rumford, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the Real Estate Commission (commission) from a Superior Court order directing reimbursement from the Real Estate Recovery Fund (fund), G.L. 1956 (1976 Reenactment) § 5–20.5–5 as amended by P.L. 1978, ch. 169, § 2, to Clifford and Evelyn Leonard (the Leonards), who were allegedly defrauded by Dudley Mattos, a licensed real estate broker. The facts are as follows.

On November 12, 1981, the Leonards filed a complaint in District Court alleging that Mattos, a real estate broker licensed by the Rhode Island Department of Business Regulation, had converted to his own use rents that he had collected from tenants who lived in an apartment building owned by the Leonards. A summons and a copy of the complaint were left at a real estate office where Mattos had worked. No service was personally made on Mattos, no summons was left at his home, and nothing on the record indicates that he received actual notice of the pending action. An amended complaint was filed on December 1, 1981, which contained similar allegations and revised figures of damages and alleged that Mattos had fraudulently and deceitfully deprived them of the rents collected. (There is nothing in the record to indicate that the amended complaint was served on Mattos.)

A default judgment was entered on January 18, 1982, because Mattos did not file an answer. The Leonards made an oral proof

of claim, and a $2,270 judgment was entered against Mattos on January 27, 1982. A writ of execution was issued on January 29, 1982. Nothing in the record indicates that this writ was served. The record does contain a copy of a handwritten note from a deputy sheriff that states that Mattos was no longer at the real estate office and would have to be served at his home in Massachusetts. On February 2, 1982, a special assistant attorney general entered an appearance on behalf of the commission.[1] The Leonards, unable to collect against Mattos, filed a motion under § 5–20.5–5 (c) (2) for payment out of the fund.[2]

The Leonards asserted that their entitlement to payment from the fund was based on the following facts. On January 24, 1980, the Leonards entered into a listing agreement with Mattos to sell an apartment house. This agreement was extended until April 23, 1981, with a provision that if the property was sold within ninety days of April 23, 1981, the Leonards would pay Mattos a commission as the listing broker. In May 1981 the Leonards moved to Florida, and Mattos convinced them to allow him to collect the rents for the building and forward them to the Leonards. Mattos collected $2,270 in rent and security deposits during August and September, but he did not turn the money over to the Leonards.

On July 21, 1982, the District Court, after a hearing, directed the commission to pay the Leonards $2,270 from the fund. The commission appealed this order to the Superior Court, where the Leonards again moved for payment from the fund. Memoranda were filed along with an agreed statement of facts, and a hearing was held. A decision was handed down on April 7, 1983, in favor of the Leonards. The commission filed a notice of appeal from this decision on April 19, 1983, and the order, directing payment from the fund, was entered on April 28, 1983.[3]

To uphold the order directing payment from the fund, we must conclude that the Leonards fully complied with § 5–20.5–5(c)(2). The first requirement for reimbursement from the fund is the existence of a valid judgment. Section 5–20.5–5(c)(2). In support of the motion for payment from the fund, the Leonards stated that they had a valid judgment against Mattos, which was entered in the District Court on January 29, 1982. Although not argued in the

---

**1.** The Department of Business Regulation is required to be notified when any action is commenced "which may result in collection from the real estate recovery fund." G.L. 1956 (1976 Reenactment) § 5–20.5–5 (c)(1) as amended by P.L. 1978, ch. 169, § 2. Upon notification "the commission may enter an appearance, file an answer, appear at the court hearing, defend the action, or take whatever other action it deems appropriate on behalf and in the name of the defendant * * *." Section 5–20.5–5(f). The Rhode Island Real Estate Commission acts for the department in such matters. Section 5–20.-5–12. It is the commission that is prosecuting this appeal.

**2.** Section 5–20.5–5(c)(2) provides:
"When any aggrieved person recovers a valid judgment in any court of competent jurisdiction against any real estate broker, or real estate salesman, upon the grounds of fraud, misrepresentation, or deceit, which occurred on or after [May 11, 1978], the aggrieved person may, upon the termination of all proceedings, including reviews and appeals in connection with the judgment, file a verified claim in the court in which the judgment was entered and, upon ten days' written notice to the [commission], may apply to the court for an order directing payment out of the real estate recovery fund, of the amount unpaid upon the judgment, subject to the limitations stated in this section."

**3.** Rule 4(a) of the Supreme Court Rules requires the filing of a notice of appeal within twenty days of the entry of the judgment, order, or decree appealed from. Rule 58(a) of the Superior Court Rules of Civil Procedure states that every judgment must be set forth on a separate document and is effective when entered. Until a judgment is entered, no appeal can be taken. *McClellan v. Thompson*, 114 R.I. 334, 341, 333 A.2d 424, 428 (1975). The commission appealed, not from the order, but from the decision. Its appeal therefore was premature. *Bristol School Department v. Board of Regents for Education*, 121 R.I. 143, 144 n.2, 396 A.2d 936, 937 n. 2 (1979). In the instant case, a valid judgment was entered on April 28, 1983, and we shall treat the appeal as having been timely filed after this judgment. *Russell v. Kalian*, 414 A.2d 462, 464 (R.I. 1980).

Superior Court or before this court, there is a question of whether valid service, a necessary prerequisite for a valid judgment, was made on Mattos.

In *Lamarche v. Lamarche*, 115 R.I. 472, 474, 348 A.2d 22, 23 (1975), the court stated that "[a] valid judgment cannot be entered against an individual who has not received any notice which would have afforded an opportunity for the concerned individual to show cause against its entry." The court in *Lamarche* held that the order, which was entered without notice, was void and could be expunged at any time. *Id.* The court continued:

> "The universal rule holds that: 'A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title.'" *Id.* at 474, 348 A.2d at 23 (quoting 1 Freeman, *Judgments* § 322 at 643–44, 645 (5th ed. 1925)).

The rule stated in *Lamarche* has been consistently followed. *E.g., Friendly Home, Inc. v. Shareholders and Creditors of Royal Homestead Land, Co.*, 477 A.2d 934 (R.I. 1984); *Griffin v. Bendick*, 463 A.2d 1340 (R.I. 1983); *Calcagno v. Calcagno*, 120 R.I. 723, 391 A.2d 79 (1978).

In order to provide a defendant proper notice, service of process must be made in accordance with Rule 4 of the Superior or District Court Rules of Civil Procedure. Rule 4(d)(1) prescribes how to obtain service upon a competent person who is within the state. It provides:

> "(d) * * * Service shall be made as follows:
>
> (1) Upon an individual other than an incompetent person by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given."

There is no claim that Mattos was personally served or that an authorized agent was served. This leaves the "dwelling house or usual place of abode" method as the only way in which Mattos could have been served.

The record indicates that the Leonards attempted to serve Mattos in the state by leaving a copy of the complaint and a summons at the real estate office where he had worked. There is no other indication of service in the file, nor is there anything in the record indicating that Mattos received the summons left at the office or otherwise received notice of the pending lawsuit. A former office or place of employment is scarcely the equivalent of a dwelling. *Prudential Investment Corp. v. Porcaro*, 115 R.I. 117, 118 n. 1, 341 A.2d 720, 721 n. 1 (1975); *see also Betlyon v. Shy*, 573 F. Supp. 1402, 1404–05 (D. Del. 1983).

Lack of valid service could vitiate the default judgment entered against Mattos and thereby preclude payment from the fund. However, since this question was not raised in the Superior Court, we remand to the Superior Court for consideration of the effect of the service at the office and for consideration of the question of whether Mattos received actual notice and if he did so, what effect, if any, that would have. In addition, an agreed statement of facts was filed in the Superior Court, which stated that the Leonards had obtained a final judgment against Mattos on the grounds of fraud. Therefore, on remand, the court should also consider whether the commission may have waived the invalidity of the judgment against Mattos. In any event, if service is found to be invalid and if it is found that Mattos did not

waive lack of service, or if the court concludes that the commission did not waive the defense of lack of valid judgment, the Superior Court should dismiss the action without prejudice.

For the reasons stated, the case is remanded to the Superior Court for proceedings consistent with this opinion.